DECISION. {¶ 1} Bernard Reid appeals his conviction for murder with a specification, two counts of felonious assault with specifications, and two counts of having a weapon while under a disability with specifications. We affirm the judgment of the trial court in all respects but the sentence. Because Reid's sentence was unconstitutional under State v. Foster, we must vacate the sentence and remand the case for resentencing.
 Background {¶ 2} On September 26, 2004, Maurice Kennedy and Cameron Watson were shot while watching a fight that was the culmination of a day-long neighborhood feud. Kennedy died from his wound.
 {¶ 3} Police officer Adrienne Brown testified that around 3:35 in the afternoon on September 26, she responded to a call from Naomi Haile's house. Naomi Haile told her that a group of young men had come to her house and had tried to get her son to fight. After Brown restored calm, she left the area. She was called back to the same house around 5:00 in the afternoon. There again was a crowd of young men at the house. Brown identified Bernard Reid as one of the people in the group. According to Brown, Reid "told Miss Haile to solve it all, just let her son come off the porch to fight in front of the police." Brown dispersed the group.
 {¶ 4} At 7:30 that evening, Maurice Kennedy and his girlfriend, Shanelle Harris, were leaving Taco Bell on Glenway Avenue when they met Blake Haile, Rick Haile, Cameron Watson, and about eight other people. According to Harris, she and Kennedy learned that there was going to be a fight. Some members of the group were armed with bats. Harris and Kennedy followed the group to watch the fight. Kennedy, Harris, Watson, and Rick Haile split off from the group with the bats and stood in a parking lot. Harris testified that she heard a man request a gun, and that shortly after at least two shots were fired. One hit Kennedy, killing him. The other hit Watson in the face. At trial, Harris and Watson identified the shooter as Reid. Gabriel Rogers was in the group that was armed with baseball bats. He testified that he had seen Reid fire the shots that hit Kennedy and Watson.
 {¶ 5} Jerry Smith lived in an apartment around the corner from where the shooting took place. He testified that when he heard gunshots that night, he went to his door. He saw a young black male lay something down in the grass behind a nearby parking lot. Smith told police officers what he had seen. Officer Barbara Mirlenbrink testified that a .357 revolver was recovered from the area indicated by Smith.
 {¶ 6} Michael Mingo testified that he had gone to Price Hill with Lawrence Griffin on September 26. According to Mingo, Griffin had had a .357 revolver that resembled the gun that was recovered by the police officers. Mingo also identified Reid as being in a group of people that was getting ready to go to a fight down the street. And he identified Reid as the person who had shot the gun twice. Mingo testified that Griffin had told him after the shooting that "some dude snatched the gun out of his hand." Griffin stated that Reid had taken the gun from him and had shot Kennedy and Watson with it. According to Griffin, after the shooting, Reid told him to get rid of the gun, so he threw it in the grass.
 {¶ 7} Reid was indicted for murder with a gun specification, two counts of felonious assault with gun specifications, and two counts of having weapons while under a disability with gun specifications. The case was tried before a jury. At the conclusion of trial, the jury found Reid guilty as charged. The trial court sentenced Reid to 15 years to life for the murder count, to three years for the specification accompanying the murder count, to eight years for each of the felonious-assault counts, and to five years for one of the weapon-under-disability counts. The three-year term for the specification to the weapon-under-disability count was merged with the specification to the murder count. The sentences were to be served consecutively for a total of 39 years to life.
 Change of Venue {¶ 8} For ease of discussion, we consider Reid's assignments of error out of order. In his second assignment of error, Reid asserts that the trial court erred when it denied his motion for a change of venue. After the first day of jury selection, Reid filed a motion for a change of venue. There is no entry denying the motion, but as venue was not changed, we conclude that it was denied sub silencio.
 {¶ 9} Crim.R. 18(B) provides that the trial court may transfer a case to another court "when it appears that a fair and impartial trial cannot be held in the court in which the action is pending." We review the trial court's denial of a motion for a change of venue to determine whether it abused its discretion.[1] This case involved the death of a young man from a well-known high school. During voir dire, it was revealed that every potential juror had heard about the case. But in response to questions from both the prosecutor and defense counsel, the potential jurors stated that they could be fair and impartial despite having heard about the case. Nothing indicated that Reid would be deprived of a fair and impartial trial. The trial court did not abuse its discretion, and the second assignment of error is therefore overruled.
 Weapons Under Disability {¶ 10} Reid's third, fourth, and fifth assignments of error involve the weapon-under-disability counts of his indictment. In the third assignment of error, he asserts that the trial court erred when it refused to dismiss the firearm specifications to each of the weapon-under-disability counts. In the fourth, he claims that the trial court erred when it refused to merge the counts. And in the fifth assignment of error, he asserts that the trial court erred when it refused to sever the counts and to try them separately.
 {¶ 11} Counts four and five of the indictment charged Reid with having a weapon while under a disability. Count four alleged that Reid had had a gun while under the disability of having been previously convicted for trafficking in drugs. Count five alleged that Reid had had a gun while under the disability of having been previously convicted of aggravated robbery. Both counts had accompanying gun specifications.
 {¶ 12} Reid argues that the specifications to counts four and five were duplicative of the underlying offenses of having a weapon under a disability, and that the specifications put him in double jeopardy. Reid contends that the trial court erred when it refused to dismiss the specifications.
 {¶ 13} The gun specifications, rather than being separate offenses, were enhancements to the underlying offenses.[2] As such, they were not duplicative of those offenses. "The imposition, in a single criminal proceeding, of cumulative punishments for a single act does not violate the Double Jeopardy Clause of the Fifth Amendment if the sentencing was consistent with clearly expressed legislative intent."[3] The legislature's clear intent to allow for cumulative punishments is manifest in R.C. 2929.14(D)(1), which provides for gun specifications.[4] Given the clear legislative intent, we conclude that the accompanying gun specifications to the weapon-under-disability offenses did not violate the Double Jeopardy Clause.
 {¶ 14} Although the specifications were not violative of the Double Jeopardy Clause, we conclude that the specification accompanying the fourth count was improper. R.C. 2929.14(D)(1)(e) provides that gun specifications may be added to weapon-under-disability counts if "the offender previously has been convicted of aggravated murder, murder, or any felony of the first or second degree" and "[l]ess than five years have passed since the offender was released from prison or post-release control[.]" The offense that was the basis of count four was trafficking in drugs, which was a felony of the fourth degree. Because the offense was not a felony of the first or second degree, the addition of a gun specification was erroneous. But because the specifications were merged for purposes of sentencing, Reid was not prejudiced by the improper gun specification. Accordingly, we conclude that the third assignment of error has no merit.
 {¶ 15} In the fourth assignment of error, Reid asserts that the trial court erred when it failed to grant his motion to merge the weapon-under-disability counts. This assignment of error has no merit. Because Reid had two prior convictions, the state had two grounds upon which to indict him for the offenses. A defendant may be indicted for two or more allied offenses of similar import.[5] The trial court properly merged the counts for sentencing. The fourth assignment of error is not well taken.
 {¶ 16} The fifth assignment of error is that the trial court erred when it refused to grant Reid's motion to sever counts four and five for a bench trial. Because he did not renew his motion to sever at the conclusion of the state's case, Reid has waived all but plain error.[6] Under the plain-error standard, Reid can not prevail on his claim "unless, but for the error, the outcome of the trial clearly would have been otherwise."[7] We conclude that Reid has not met this strict standard.
 {¶ 17} "If it appears that a defendant * * * is prejudiced by a joinder of offenses * * * the court shall order an election or separate trials of counts."[8] Here, Reid argues that he was prejudiced by the joinder of the offenses because the weapon-under-disability offenses allowed the state to present evidence of prior convictions that would otherwise have been inadmissible.
 {¶ 18} The state can counter a defendant's claim of prejudice in one of two ways: the other-acts test or the joinder test.[9] Under the other-acts test, the state must demonstrate that the prior convictions would be admissible in a trial for the other offense under Evid.R. 404(B).[10] Under the joinder test, prejudice is negated where the evidence of each offense that has been joined is simple and direct.[11] The evidence of the weapon-under-disability offenses was simple and direct. It is unlikely that the jury confused the offenses. We conclude that the refusal to sever the offenses did not amount to plain error.
 {¶ 19} Although separate from the issue of severance, Reid also argues in this assignment of error that the trial court erred when it did not instruct the jury about the appropriate consideration it should have given to Reid's prior convictions. Because Reid did not object to the trial court's jury instructions, we consider whether the trial court's omission of a limiting instruction amounted to plain error. We conclude that it did not because we can not say that the outcome of the trial would have changed had the jury been so instructed. The fifth assignment of error is overruled.
 Felonious Assault {¶ 20} In his sixth assignment of error, Reid asserts that the trial court erred when it convicted him of two counts of felonious assault. Although a defendant may be indicted for two or more allied offenses of similar import, he may be convicted of only one.[12] Reid was indicted for the felonious assault of Cameron Watson in violation of R.C.2903.11(A)(1), which prohibits causing serious physical harm to another, and for the felonious assault of Cameron Watson in violation of R.C.2903.11(A)(2), which prohibits causing physical harm to another by means of a deadly weapon. Reid argues that because both offenses involved the same act against Watson, he could only have been convicted of one.
 {¶ 21} In State v. Coach, we held that felonious assault under R.C.2903.11(A)(1) and felonious assault under R.C. 2903.11(A)(2) were not allied offenses of similar import.[13] We reasoned that "the elements of [the] offenses do not correspond so that the commission of one will result in the commission of the other."[14] Reid argues that because the two offenses for which he was convicted stemmed from one act — shooting Watson — the offenses were allied offenses of similar import. He urges us to overturn Coach. But our conclusion in Coach was based on the Ohio Supreme Court's decision in State v. Rance.[15] InRance, the court held that, rather than an examination of the particular facts of a case, "[u]nder an R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract."[16] Although the Ohio Supreme Court seems to have retreated from its own decision,[17] Rance has not been overturned,[18] and we are bound by it. Accordingly, as long asRance is the controlling precedent, we decline to overturn our decision in Coach. The sixth assignment of error is overruled.
 Motion to Suppress {¶ 22} In his seventh assignment of error, Reid asserts that the trial court erred when it overruled his motion to suppress the pretrial identification made by Cameron Watson.
 {¶ 23} Cameron Watson identified the shooter to police as a light-skinned African-American with a height of about 5'9" or 5'10". Four days after the shooting, Watson was shown a lineup that included a photograph of Reid. Watson picked Reid's photograph and identified him as the shooter. He told police officers that, on a scale of one to ten, his level of certainty was a six. Watson was also shown two other lineups in which he identified other people who had been at the fight on September 26.
 {¶ 24} Reid asserts that the identification process was unduly suggestive and unreliable. We disagree. If a defendant demonstrates that an identification procedure is unnecessarily suggestive, the trial court must determine "whether the procedure was so unduly suggestive as to give rise to a substantial likelihood of mistaken identification."[19]
We conclude that the lineup arrays shown to Watson were not unduly suggestive. The lineup that included Reid's photograph had photographs of other men who had similar features. Reid's photograph did not stand out in a way that would have made the array suggestive. And that Watson rated his certainty a six out of ten did not diminish the reliability of the identification process. The extent of his certainty was a factor for the jury to consider when giving weight to his identification. The seventh assignment of error is overruled.
 Photographs {¶ 25} The state introduced photographs of Maurice Kennedy's body after the shooting. In his eighth assignment of error, Reid asserts that the trial court erred when it admitted these photographs, because they were cumulative and prejudicial. Specifically, Reid refers to four photographs that were taken from the same angle.
 {¶ 26} "Properly authenticated photographs, even if gruesome, are admissible * * * if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number."[20] As indicated during Officer Barbara Mirlebrink's testimony, each photograph demonstrated a different aspect of the case — Kennedy's location when he fell, the relative location of other evidence, and the entrance and exit wounds. We conclude that the photographs' probative value outweighed any prejudice to Reid, and that the photographs were not cumulative. The eighth assignment of error is without merit.
 Weight and Sufficiency {¶ 27} In his first assignment of error, Reid asserts that his conviction was based on insufficient evidence, and that it was against the manifest weight of the evidence. A sufficiency argument challenges whether the state presented adequate evidence on each element of the offense.[21] On the other hand, when reviewing whether a judgment is against the manifest weight of the evidence, we must determine whether the jury clearly lost its way and created a manifest miscarriage of justice.[22]
 {¶ 28} Reid was convicted of the murder of Maurice Kennedy. The state put on sufficient evidence that Reid had purposely caused the death of Kennedy.[23] In addition, the state put on sufficient evidence of the felonious-assault offenses against Cameron Watson.[24] Reid argues that the witnesses who identified Reid offered contradictory testimony. And at trial, he offered the eyewitness testimony of Donald Walker and Nicholas Wiggins, who gave a different description of the shooter. But any conflicts could have been resolved by the jury, which was in the best position to judge the credibility of the witnesses. Having thoroughly reviewed the record, we conclude that the murder and felonious-assault convictions were not against the manifest weight of the evidence.
 {¶ 29} With respect to the weapon-under-disability offenses, Reid argues that the state's evidence was insufficient. R.C. 2923.13(A) makes it a crime to "knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * (2) [t]he person * * * has been convicted of any felony offense of violence * * * or (3) [t]he person * * * has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]" Contrary to Reid's statement in his brief that the state presented no evidence of Reid's prior convictions, the state presented certified copies of the entries of Reid's convictions for aggravated robbery and for trafficking in cocaine. Reid's parole officer, Hugh Jentry, also testified about his past convictions. We conclude that the state presented sufficient evidence of the offenses, and that the jury's guilty verdicts were not against the manifest weight of the evidence. The first assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 30} Reid's ninth assignment of error is that he was deprived of the effective assistance of counsel. To prevail on his claim that his counsel was ineffective, Reid must demonstrate that his counsel's performance was deficient, and that absent his counsel's errors, the result of the trial would have been different.[25] Our review of counsel's performance must be "highly deferential."[26]
 {¶ 31} Reid first argues that counsel was ineffective because they did not request a jury instruction on manslaughter. According to Reid, even if witnesses had placed him at the scene of the crimes, it was arguable that he did not shoot Watson and Kennedy purposely, and that Reid could have been guilty of manslaughter. But counsel's strategy was to raise doubt that Reid had shot the gun. To this end, they disputed witnesses' identifications of Reid and suggested that Reid's cousin, Roderick Reid, was responsible for the crimes. To argue that Reid did not shoot purposely would have run counter to this strategy. We will not second-guess counsel's trial strategy. And a voluntary-manslaughter instruction would not have been appropriate in any event, as there was no testimony that Reid had acted "under the influence of sudden passion or in a sudden fit of rage * * * brought on by serious provocation[.]"[27]
 {¶ 32} Reid also argues that his counsel was ineffective because they did not hire an expert witness to analyze gunshot-residue kits collected by the police. During the investigation of the shooting, police collected swabs from six individuals to determine whether there was gunshot residue that would connect them to the shooting. But the Hamilton County Coroner's laboratory was not equipped to process the gunshot-residue kits. Reid asserts that the gunshot-residue kits should have been tested by an expert because the results could have pointed to the person who had shot the gun. Defense counsel used the police's inability to test the kits as further evidence of doubt that Reid was the shooter. We will not second-guess their strategy in using the unresolved question as a way to instill doubt. And given the overwhelming evidence of Reid's guilt, the result of the trial would not have changed even if an expert had been hired.
 {¶ 33} Reid finally argues that his counsel was ineffective because they did not request that the trial court give a limiting instruction to the jury regarding the appropriate consideration to be given to his prior convictions. We conclude that the limiting instruction would not have changed the result of the trial. The ninth assignment of error is overruled.
 Sentencing {¶ 34} The trial court sentenced Reid to the maximum prison terms for the felonious-assault offenses and for having weapons under a disability. And it ordered that all the sentences run consecutively. In his tenth assignment of error, Reid asserts that the sentences violated his Sixth Amendment right to a jury trial as set forth by the United States Supreme Court in Blakely v. Washington.[28]
 {¶ 35} In State v. Foster, the Ohio Supreme Court held that R.C.2929.14(C), which governs the imposition of maximum sentences, and R.C.2929.14(E), which governs the imposition of consecutive sentences, are unconstitutional under the reasoning of Blakely.[29] The court severed those provisions from Ohio's sentencing scheme, and trial courts now have discretion to impose a sentence within the statutory range for the offense without making findings or giving reasons for the sentence.[30] Because Reid was sentenced under unconstitutional provisions, we must sustain this assignment error.
 {¶ 36} We vacate Reid's sentence and remand the case to the trial court for resentencing in accordance with the law. In all other respects, we affirm the judgment of the trial court.
Sentence vacated and cause remanded.
GORMAN, P.J., and HENDON, J., concur.
[1] State v. Maurer (1984), 15 Ohio St.3d 239, 250,473 N.E.2d 768.
[2] See State v. Williams (Feb. 18, 1988), 8th Dist. No. 53386.
[3] Id.
[4] See Williams, supra, and State v. Greco (Jan. 29, 1996), 12th Dist. No. CA95-06-101 (construing anearlier version of the gun-specification statute, R.C. 2929.71).
[5] R.C. 2941.25(A).
[6] State v. Owens (1975), 51 Ohio App.2d 132, 146,366 N.E.2d 1367.
[7] State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
[8] Crim.R. 14.
[9] State v. Rutledge (June 1, 2001), 2nd Dist. No. 18462.
[10] Id.
[11] Id.
[12] R.C. 2941.25(A).
[13] (May 5, 2000), 1st Dist. No. C-990349.
[14] Id.
[15] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
[16] Id. at paragraph one of the syllabus (emphasis in original).
[17] State v. Adams, 103 Ohio St.3d 508, 2004-Ohio-5845,817 N.E.2d 29.
[18] See State v. Cooper, 104 Ohio St.3d 293, 2004-Ohio-6553,819 N.E.2d 657.
[19] State v. Haynes, 1st Dist. No. C-020685, 2004-Ohio-762.
[20] State v. Maurer, supra, paragraph seven of the syllabus.
[21] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[22] See id. at 387.
[23] See R.C. 2903.02(A).
[24] See R.C. 2903.11(A)(1) and (2).
[25] See State v. Bradley (1989), 42 Ohio St.3d 136, 142,538 N.E.2d 373; Strickland v. Washington (1984),466 U.S. 668, 687,104 S.Ct. 2052.
[26] Strickland, supra, at 689.
[27] R.C. 2903.03.
[28] (2004), 542 U.S. 296, 124 S.Ct. 2531.
[29] 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraphs one and three of the syllabus.
[30] Id. at paragraphs two and four of the syllabus.