OPINION.
{¶ 1} Defendant-appellant David Render was convicted upon no-contest pleas to resisting arrest with a firearm specification, carrying a concealed weapon, and two counts of having a weapon under a disability with firearm specifications. Finding no error below, we affirm.
 Flight from a Police Officer Ends in Shooting {¶ 2} Before entering his no-contest pleas, Render filed a motion to suppress. The record of the hearing on the motion shows that officers working with the regional Drug Abuse Reduction Team ("DART") were monitoring an apartment for drug and drug-related activity when two men were seen leaving. The apartment was located in "a high drug trafficking area." The DART officers radioed Corey Hill, a uniformed Forest Park police officer. They gave a description of the two men and asked Officer Hill to approach them and obtain identification.
 {¶ 3} As Officer Hill approached, but before speaking to the men, he noticed that they smelled of alcohol and burnt marijuana. He also noticed that the men had beer on their persons. When Officer Hill reached the men, he asked them for identification. Render refused to produce it and began making furtive movements toward his waist. He became verbally abusive and profane toward the officer. He then fled to the other side of Officer Hill's cruiser. Render's hands were not visible, and the officer was concerned that Render might be armed. Officer Hill pursued Render around his cruiser several times, ordering him to stop.
 {¶ 4} The officer testified at the suppression hearing that he had attempted to use his Taser to stop Render, but the record is unclear whether the Taser prongs struck *Page 3 
Render. The record does indicate that Render went down at this point. But immediately after the officer had turned the corner of the cruiser to apprehend Render, he saw Render pointing a loaded revolver at the officer's head. Officer Hill retreated to the rear of the cruiser, and Render moved to the front. Officer Hill continued to order Render to stop and to show his hands. Render then ran from the cruiser.
 {¶ 5} As the pursuit continued, the officer continued to order Render to stop. Render yelled back, "Fuck you, I'm not going to jail." At this point, Render's hands were still not visible. When Render spun to face the officer, the officer fired. Render was struck and fell.
 {¶ 6} Even after he had fallen, Render's hands were not visible. When Officer Hill approached him, he refused to remove his hands from his pockets. Render was eventually subdued and arrested. The officer discovered that the item Render was grabbing in his pocket was a cellular phone. The gun Render had pointed at the officer was found under the cruiser. Hill testified that the entire incident had occurred in under one minute.
 {¶ 7} After treatment for his injuries, Render was brought to the police station for questioning by a detective. When his wound began to bleed again, Render received treatment from a medic at the police station. The detective asked Render if he wanted to be returned to the hospital for further medical treatment, but he refused and signed a refusal form. According to the detective, she reviewed Render'sMiranda rights with him. While he could not sign the form, the detective testified, Render had initialed it. The detective testified that Render had been verbal and coherent. He then made a statement. Render testified that he did not review the *Page 4 Miranda form or initial it, although he conceded that he recognized it. He also testified that he did not waive his rights.
 {¶ 8} Render sought by his motion to suppress both his statement and the evidence seized following the initial stop. During the suppression hearing, Officer Hill, the detective, Render's companion, and Render all testified. The trial court denied the motion in its entirety. After a brief recess, Render entered his no-contest pleas. The state indicated that the facts underlying the allegations were those in the indictment and the evidence produced at the suppression hearing.
 {¶ 9} Based on that evidence and his plea, the trial court found Render guilty. Render was sentenced to a total of eight years in prison. The sentences for all four counts were ordered to be served concurrently, but they were made consecutive to the gun specification on the resisting-arrest charge. The remaining gun specifications were merged with the first.
 {¶ 10} On appeal, Render raises four assignments of error. Two address the denial of his motion to suppress. The third challenges the validity of his conviction for resisting arrest. His final assignment asserts that the two weapon-under-disability charges should have merged as allied offenses. We address each assignment of error in turn.
 An Attempted Seizure is not a Seizure {¶ 11} Render first argues that the gun should have been suppressed. For this contention to be correct, there must have been a showing below that the gun was taken as a result of an improper seizure. Toward this end, Render argues that "the initial stop and subsequent continuing detention * * * was [sic] illegal and all evidence seized should have been suppressed." Both contentions are incorrect. *Page 5 
 {¶ 12} The review of a suppression ruling presents a mixed question of law and fact.[1] Accepting the properly supported findings of the trier of fact as true, an appellate court must determine as a matter of law, without deference to the trial court's conclusion, whether the trial court erred in applying the substantive law to the facts of the case.[2]
 {¶ 13} Render first argues that the initial encounter violated the Fourth Amendment. The problem with this argument is that the initial encounter between Render and the officer was not a "seizure" under the Fourth Amendment. It is well settled that the Fourth Amendment is not implicated in the case of a consensual encounter.[3] Consensual encounters include many long-standing, routine police practices such as approaching a person in a public place, engaging the person in conversation, requesting information from the person, and examining the person's identification.[4] In this case, the officer approached Render to ask for his identification. The officer did not need probable cause or reasonable suspicion to walk up and talk to Render.
 {¶ 14} The second part of Render's argument is that his "continuing detention" was improper. For a seizure to occur for purposes of the Fourth Amendment, there must be a showing of "either physical force * * * or submission to the assertion of authority."[5] *Page 6 
 {¶ 15} The Third Appellate District recently addressed a situation nearly identical to this one.[6] In that case, officers in police jackets entered an apartment complex known for drug activity. Richardson saw the officers and ran. With the officers in pursuit, he threw something away, turned, and growled at the officers. He was taken into "investigative custody," and a gun was found in the area where he had thrown the unknown item.
 {¶ 16} On appeal, Richardson made an argument similar to Render's. The court concluded that the Fourth Amendment was inapplicable. "Richardson did not submit to Officer Frankart's authority in ordering him to stop, and no physical force was applied to Richardson before he discarded the * * * handgun. Moreover, even assuming that Frankart's pursuit constituted a `show of authority' enjoining Richardson to halt, Richardson did not comply with that injunction and therefore was not actually seized until he was secured in investigative custody by Frankart."[7]
 {¶ 17} In this case, Render never submitted to the authority of Officer Hill prior to abandoning the gun. Under these circumstances, no seizure occurred. The encounter and chase did not amount to a Fourth Amendment violation, and the evidence recovered was not the fruit of an unreasonable seizure.
 {¶ 18} Even if we were to assume that a seizure cognizable under the Fourth Amendment had occurred when Hill deployed his Taser (Render adamantly denied being "tased" when he testified at the suppression hearing), the seizure was sufficiently supported by a reasonable, articulable suspicion that criminate activity was afoot. Before he even reached Render to speak with him, the officer had noticed an odor of alcohol and marijuana. He saw that Render had a container of alcohol. *Page 7 
Render had just left a building being investigated for drug-related activity that was located in a "high drug activity area." Render immediately became hostile and uncooperative, made suspicious movements around his waist area, and fled.
 {¶ 19} The United States Supreme Court has held that an accused's presence in a high-crime area, coupled with his unprovoked flight at the sight of a police officer, constitutes reasonable suspicion to justify a stop.[8] In a similar situation, the Eleventh Appellate District held that probable cause existed.[9] The Fifth Appellate District recently reached the same conclusion in the context of "a consensual encounter that was elevated to a Terry stop with the fleeing of appellant."[10]
Therefore, even if the Fourth Amendment was implicated in this case, the officer had reasonable suspicion to justify a "stop." In either case, the denial of the motion to suppress was proper.
 Render's Statement was Properly Admitted {¶ 20} Render also argues that the statement given by him to the detective should have been suppressed because it was taken in violation of his rights under Miranda v. Arizona.[11] He points out that he testified that "he was not advised of his rights and did not sign the waiver of rights form." However, the detective testified that Render had not been under duress, that the two of them had reviewed theMiranda form, and that Render had initialed it. The trial court determined that the detective was more credible. This was purely a factual determination, and based on the record, the court's finding was not an abuse of discretion. *Page 8 
 Render was Properly Convicted of Resisting Arrest {¶ 21} In his third assignment of error, Render argues that the trial court erred when it found him guilty of resisting arrest. In support of this claim, he cites this court's decision in State v.Carroll[12] for the proposition that "where police are not attempting to arrest a defendant when he flees, a conviction for resisting arrest cannot stand."
 {¶ 22} There is one significant difference between this case andCarroll. Carroll was convicted after a bench trial. Render pled no-contest. While a no-contest plea is not an admission of guilt, it is "an admission of the truth of the facts alleged in the indictment."[13] The Supreme Court of Ohio has held that, upon receipt of a no-contest plea, a trial court must find a defendant guilty of the charged offense if the indictment alleges sufficient facts to state a felony offense.[14] This court has also held that "where * * * an indictment contains sufficient allegations to state a felony offense and a court accepts an intelligent and voluntary plea of no-contest, itmust find the defendant guilty of the offense charged."[15]
 {¶ 23} The indictment in this case mirrored the language of R.C.2921.33(B). Render pled no-contest to the offense as stated in the indictment. He did not, and has not, raised an issue regarding the validity of his plea. Therefore, Render admitted to the trial court that he had "recklessly resisted the lawful arrest of himself," and that "during the course of the resistance, [he had] brandished a deadly weapon." Upon the authority of our decisions in Bird andHorton, the trial court properly found Render guilty based on those admissions. *Page 9 
 No Allied Offenses for Weapon-under-Disability Charges {¶ 24} Render's final argument is that the two weapon-under-disability counts should have been merged for sentencing. He argues that the offenses "were based on two different past convictions, not two different acts." While we agree with that assertion, that does not control the analysis.
 {¶ 25} In State v. Rance, the Ohio Supreme Court determined that if the elements of two crimes "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import."[16] If they do not, "the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted."[17] To decide whether two charges involve allied offenses under Rance, the offenses must be compared in the abstract.[18]
 {¶ 26} While we have found no decision that has addressed two weapon-under-disability charges, our recent opinions involving felonious assault are instructive. In State v. Reid,[19] the defendant shot one victim and was charged with two counts of felonious assault-one under R.C. 2903.11(A)(1) for serious physical harm and one under R.C.2903.11(A)(2) for use of a deadly weapon. We held that "the elements of [the] offenses do not correspond so that the commission of one will result in the commission of the other." In so holding, we specifically rejected the argument that the offenses should merged because they stemmed from a single act.[20]
 {¶ 27} In Reid, the defendant committed one act that violated two different sections of the same statute. In this case, Render had one gun, the possession of *Page 10 
which violated two different sections of the same statute. Render was charged with two counts of having a weapon while under a disability: one under R.C. 2923.13(A)(2) because of prior convictions for the felonies of violence of robbery in 2000, escape in 1989, and witness intimidation in 1989; and one under R.C. 2923.13(A)(3) because of a prior drug conviction, specifically, drug abuse in 1992.
 {¶ 28} In the abstract, one can possess a weapon while having a prior conviction for a felony of violence without also having a prior conviction for a drug offense. In fact, Render had three convictions for violent felonies. Had he been charged separately for each of them, the outcome might have been different. As he was actually charged, however, the two counts did not involve allied offenses, and Render was properly convicted of both.
 {¶ 29} For the foregoing reasons, we overrule the assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
SUNDERMANN, J., concurs.
PAINTER, P.J., concurs in part and dissents in part.
[1] See State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972;Cincinnati v. Blair, 1st Dist. Nos. C-060045 and C-060046,2006-Ohio-6619.
[2] SeeState v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141.
[3] United States v. Mendenhall (1980), 446 U.S. 544, 553,100 S.Ct. 1870.
[4] Florida v. Rodriguez (1984), 469 U.S. 1, 4-6, 105 S.Ct. 308.
[5] State v. Franklin (Jan. 29, 1993), 1st Dist. No. C-920264, quotingCalifornia v. Hodari D. (1991), 499 U.S. 621, 626, 111 S.Ct. 1547.
[6] State v. Richardson, 3rd Dist. No. 13-06-21, 2007-Ohio-115.
[7] Id. at ¶ 21.
[8] Illinois v. Wardlow (2000), 528 U.S. 119, 120 S.Ct. 673.
[9] State v. Hull, 11th Dist. No. 2003-A-0068, 2005-Ohio-2526, at ¶ 12-13.
[10] State v. Robinson, 5th Dist. No. 2006CA0024, 2007-Ohio-850, at ¶ 20.
[11] (1966), 384 U.S. 436, ___ S.Ct. ___.
[12] 162 Ohio App.3d 672, 2005-Ohio-4048, 834 N.E.2d 843.
[13] State v. Bird, 81 Ohio St.3d 582, 584, 1998-Ohio-606,692 N.E.2d 1013.
[14] Id.
[15] State v. Horton (May 25, 2001), 1st Dist. No. C-000434 (emphasis added).
[16] State. v. Rance, 85 Ohio St.3d 632, 636, 199-Ohio-291,710 N.E.2d 699.
[17] Id.
[18] Id.
[19] 1st Dist. No. C-050465, 2006-Ohio-6450.
[20] Id., quoting State v. Coach (May 5, 2000), 1st Dist. No. C-990349.