{¶ 1} Defendant-Appellant, Joseph Thomas, appeals the judgment of the Hamilton County Court of Common Pleas convicting him of rape under R.C.2907.02(A)(1)(c) and kidnapping under R.C. 2905.01(A)(4). He was convicted after a jury trial.
 {¶ 2} Thomas drove a bus for a company that operated Queen City Metro's "ACCESS" program, a transportation service for the disabled. As part of his job training, Thomas was taught how to interact with disabled persons. The ACCESS bus routes were monitored electronically, and the drivers were required to maintain a "manifest" documenting where they had travelled.
 {¶ 3} Adrienne Bauman was a frequent passenger on Thomas's route. Bauman suffered from a seizure disorder and was mentally handicapped. Because of her disabilities, she was unable to maintain regular employment or to live independently. There was evidence that her mental disability prevented her from finding her way home if she travelled any significant distance from her residence. She worked for Goodwill Industries, which provided employment for persons who were unable to maintain a job in the regular workforce.
 {¶ 4} Bauman testified that she had been riding the bus from her job one day and that she had been discussing her weekend plans with Melinda Gabelman, another passenger. Bauman testified that the subject of sex had arisen and that Thomas had asked the women if they knew how to perform fellatio.
 {¶ 5} When the bus got to Bauman's regular stop, Thomas continued to drive and went instead to Gabelman's stop. After Gabelman left, Thomas drove to a *Page 3 
park, where he took Bauman to the back of the bus. According to Bauman, Thomas had then forced her to perform fellatio.
 {¶ 6} In the evening after the incident, Bauman told her mother what had happened. Her mother took her to a hospital, where she was examined by a nurse who specialized in sexual-assault cases.
 {¶ 7} When the police questioned Thomas about Bauman's allegations, he initially denied any sexual contact. But when confronted with proof that his manifest did not match the data compiled by his employer's electronic tracking system, he admitted that Bauman had performed oral sex on him. He maintained, though, that the encounter had been consensual.
 {¶ 8} At trial, Thomas again stated that Bauman had consented to oral sex and that he had not driven her past her regular stop against her will. He testified that, although he had been aware of Bauman's disabilities, he had believed that she had been capable of consenting to sex.
 {¶ 9} After the jury found Thomas guilty of rape and kidnapping, the trial court sentenced him to two concurrent nine-year prison terms.
 HEARSAY AND THE PERFORMANCE OF TRIAL COUNSEL {¶ 10} For purposes of clarity, we address the assignments of error out of order. We begin with the second assignment of error, in which Thomas argues that the trial court erred in admitting inadmissible hearsay into evidence. Specifically, he challenges the testimony of Bauman's mother and the sexual-assault nurse, who both repeated Bauman's statements concerning the alleged sexual assault.
 {¶ 11} Thomas argues that Bauman's statement to her mother was not admissible under the hearsay exception for excited utterances because the statement *Page 4 
had been made several hours after the sexual contact.[1] And he argues that the statement to the nurse was not admissible as a statement given for medical diagnosis or treatment because the details surrounding the sexual contact were not pertinent to the diagnosis or treatment.[2]
 {¶ 12} We first note that there was no objection to the testimony of Bauman's mother, and we therefore review the admission of her testimony for plain error. Under the plain-error standard, we will not reverse a conviction unless, but for the error, the outcome clearly would have been different[3]
 {¶ 13} Here, we find no plain error. Because Bauman's own testimony was consistent with the statement related by her mother, the out-of-court statement was merely cumulative and cannot be said to have altered the outcome of the trial. Although Thomas argues that the testimony of Bauman's mother tended to bolster Bauman's credibility, we disagree that he was unduly prejudiced by the asserted corroboration.
 {¶ 14} For the same reasons, we find no prejudicial error in the admission of the nurse's testimony. The plain-error standard is not applicable to that testimony, but we nonetheless hold that Thomas was not deprived of a fair trial by the admission of the cumulative evidence.[4] Any error was harmless beyond a reasonable doubt, and we overrule the second assignment of error.
 {¶ 15} In his first assignment of error, Thomas argues that he was denied the effective assistance of trial counsel. Specifically, he argues that his counsel was *Page 5 
deficient in failing to object to the hearsay statement in the testimony of Bauman's mother.
 {¶ 16} To establish ineffective assistance of trial counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance.[5]
 {¶ 17} Having already held that Thomas was not unduly prejudiced by Bauman's out-of-court statement, we also hold that counsel was not deficient in failing to object to the testimony of her mother. We overrule the first assignment of error.
 WEIGHT AND SUFFICIENCY OF THE EVIDENCE {¶ 18} In his fourth assignment of error, Thomas argues that his convictions were based on insufficient evidence and were against the manifest weight of the evidence.
 {¶ 19} In the review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6] To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[7] *Page 6 
 {¶ 20} The rape statute, R.C.2907.02(A)(1)(c), provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * *."
 {¶ 21} The kidnapping statute, R.C. 2905.01(A)(4), provides that "[n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim agains the victim's will."
 {¶ 22} In this case, the convictions were in accordance with the evidence. The state demonstrated that Thomas had taken advantage of Bauman's disability, specifically her inability to find her way home, to coerce her into performing fellatio. He restrained her liberty by driving past her scheduled bus stop and by driving to a place of seclusion so that he could engage in sexual activity with her.
 {¶ 23} Thomas argues that he had believed Bauman capable of consenting to sexual activity and that she had in fact consented to fellatio. We are not persuaded. Thomas was trained to recognize disabilities and to treat the disabled according to their limitations. Bauman had been a passenger on Thomas's bus many times before the incident in question, and Thomas admitted his awareness that Bauman was mentally disabled. Moreover, Thomas's initial denial of any sexual acitivity and his *Page 7 
falsification of the bus company's manifest confirmed his awareness that his actions were wrongful.
 {¶ 24} Accordingly, we overrule the fourth assignment of error.
 JURY INSTRUCTIONS {¶ 25} In the third assignment of error, Thomas contends that the trial court erred in denying his request for a jury instruction on unlawful restraint, a lesser-included offense of kidnapping.
 {¶ 26} A trial court is required to give a requested jury instruction on a lesser-included offense only where the evidence would reasonably support both an acquittal on the crime charged and a conviction on the lesser offense.[8] In deciding whether to give an instruction on a lesser-included offense, the trial court must view the evidence in a light most favorable to the defendant.[9]
 {¶ 27} R.C. 2905.03, governing unlawful restraint, provides that "[n]o person, without privilege to do so, shall knowingly restrain another of his liberty."
 {¶ 28} Here, the state presented overwhelming evidence of Bauman's disability, and a jury could not have reasonably found that Thomas had restrained her liberty for any purpose other than to coerce sexual conduct. The evidence therefore did not reasonably support both an acquittal for kidnapping and a conviction for unlawful restraint. We overrule the third assignment of error.
 ALLIED OFFENSES {¶ 29} In the fifth and final assignment of error, Thomas argues that the trial court erred in imposing sentences for both rape and kidnapping because they were allied offenses of similar import. *Page 8 
 {¶ 30} Under State v. Rance,[10] the offenses were not allied because each required proof of an element that the other did not. But Thomas maintains that the Supreme Court of Ohio has retreated from the strict comparison-of-elements test in cases involving rape and kidnapping.
 {¶ 31} In State v. Adams,[11] the court stated, without discussingRance, that rape and kidnapping are not allied offenses "where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense * * * ."[12]
 {¶ 32} In the case at bar, all three of the circumstances described inAdams were present. Thomas drove past Bauman's bus stop and took her to a secluded location, where she was restrained for a period of time sufficient for Thomas to compel her to perform fellatio. Accordingly, the state demonstrated a separate animus for rape and kidnapping underAdams.
 {¶ 33} So, under Rance and Adams, multiple convictions were proper. We overrule the fifth assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
SUNDERMANN and HENDON, JJ., concur.
[1] See Evid.R. 803(2).
[2] See Evid.R. 803(4).
[3] See, e.g., State v. Reid, 1st Dist. No. C-050465, 2006-Ohio-6450, at ¶ 16.
[4] See, e.g., State v. Gaines, 1st Dist. Nos. C-040122 and C-040139,2005-Ohio-3032, at ¶ 26
[5] Strickland v. Washington (1984), 466 U.S. 668, 686,104 S.Ct. 2052; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. paragraphs two and three of the syllabus.
[6] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819.
[7] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[8] State v. Neely, 161 Ohio App.3d 99, 2005-Ohio-2342,829 N.E.2d 718, at ¶ 44, jurisdictional motion overruled, 108 Ohio St.3d 1473,2006-Ohio-665, 842 N.E.2d 1053.
[9] Id.
[10] 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, paragraph one of the syllabus.
[11] 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29.
[12] Id. at ¶ 90, quoting State v. Logan (1979), 60 Ohio St.2d 126,397 N.E.2d 1345, syllabus. *Page 1