DECISION.
{¶ 1} On September 26, 2004, defendant-appellant Bernard Reid fired a gun toward a crowd, injuring one person and killing another. Following a jury trial in May 2005, he was convicted of murder, two counts of felonious assault, and two counts of having a weapon while under a disability, with accompanying specifications. On appeal, we affirmed the findings of guilt, but remanded the case for resentencing.[1] In a later appeal, we affirmed his sentences.[2]
 {¶ 2} Nearly two years later, in March 2007, Reid filed a motion for leave to file a motion for a new trial based on newly discovered evidence. Reid presented the affidavit of DeSean Plair, who alleged that he had been an eyewitness to the crimes for which Reid had been convicted, and that someone other than Reid had been the assailant. The trial court allowed Reid to file the motion.
 {¶ 3} At the hearing on Reid's motion for a new trial, Plair testified that, on September 26, 2004, he had seen Lawrence Griffin fire a gun two times toward a crowd. At Reid's trial, Griffin had testified that Reid had taken a gun away from him and fired it. Four other witnesses for the state had also identified Reid as the shooter, including one witness who had heard him ask for a gun.
 {¶ 4} Plair testified that he did not know Reid at the time of the shootings, but that he remembered seeing him then. Plair said that Reid had not been involved in the dispute that had preceded the shootings. According to Plair, Reid "was there but he didn't get into no fight." *Page 3 
 {¶ 5} Plair testified that he later met Reid approximately three months after the shootings, in December 2004, when they were both locked up in a juvenile detention facility.
 {¶ 6} Then, in January 2005, Plair had been bound over and transferred to the county jail, where Reid was also being held. At the jail, Plair saw media coverage of the shootings and knew that Reid had been charged with committing the offenses. Although Plair claimed to be certain that Reid had not fired the gun, he did not tell anyone. Plair testified that he did not think that Reid would be convicted of the offenses.
 {¶ 7} In the summer of 2005, Plair was convicted of aggravated robbery and sentenced to seven years in prison. After the imposition of his prison sentence, Plair was transported to the Correctional Reception Center in Orient, Ohio, where he saw Reid again. Plair testified that he had recognized Reid by his face and by his tattoos. He approached Reid and told him that he knew he was innocent, and that he knew who had been the shooter. Plair also told Reid that he would be willing to testify for him.
 {¶ 8} Shortly thereafter, in August 2005, Plair began serving his term at the Lebanon Correctional Institution. Plair said that Reid had been assigned to the same prison block. Plair admitted that, in prison, he and Reid had spoken extensively about the details of the shootings, including details about the people who were present, what they had worn, and where they had come from.
 {¶ 9} At the hearing, Plair was unable to explain his failure to tell anyone that Griffin, not Reid, was the shooter, in the months preceding Reid's trial:
 {¶ 10} "THE COURT: Why didn't you say this when you were in the county jail? This case wasn't tried for several months after you were arrested. *Page 4 
 {¶ 11} "[PLAIR]: I was afraid. I didn't know what to do. I was afraid at the time.
 {¶ 12} "THE COURT: Afraid of what?
 {¶ 13} "[PLAIR]: Just I was scared you know.
 {¶ 14} "THE COURT: Scared of what?
 {¶ 15} "[PLAIR]: Didn't know what to do. I thought I could get in trouble for it, you know.
 {¶ 16} "THE COURT: How would you get in trouble for it?
 {¶ 17} "[PLAIR]: That's what I was saying, I didn't know. I just didn't know.
 {¶ 18} "THE COURT: So what alleviated your fear and why in [the Correctional Reception Center] and not in the county jail before [Reid] ever goes to trial?
 {¶ 19} "[PLAIR]: I just knew when I seen him at CRC, I just knew. I said I would be willing to testify. I know he was innocent.
 {¶ 20} "THE COURT: If you were afraid[,] why not there [at CRC]? Why were you afraid here [in the county jail]?
 {¶ 21} "[PLAIR]: I was just afraid. I just ain't know what to do. I didn't know who to talk to. I just didn't know.
 {¶ 22} "THE COURT: You had a lawyer, didn't you?
 {¶ 23} "[PLAIR]: Yes."
 {¶ 24} * * *
 {¶ 25} "THE COURT: Did you mention it to him?
 {¶ 26} "[PLAIR]: No. Talking to him, I was steady fighting my case, you know."
 {¶ 27} At the conclusion of the hearing, the trial court denied Reid's motion for a new trial. The court noted that it had presided over Reid's trial and that, based upon *Page 5 
its knowledge of the case and upon its observation of Plair, it had found Plair "to be incredible." The court continued, "He is not credible in any sense of the word. He has known about this apparently, well, since the day it happened, and he doesn't come forward for two and a half years, a full year and a half or more after he had contact with Mr. Reid? And this kind of thing just has no merit whatsoever."
 {¶ 28} In a single assignment of error, Reid argues that the trial court erred by denying the motion. The decision granting or denying a motion for a new trial is ordinarily committed to the sound discretion of the trial court[3] We will not disturb the trial court's decision unless it is unreasonable, arbitrary, or unconscionable.[4]
 {¶ 29} Crim. R. 33(A)(6) allows a new trial to be granted on the ground of newly discovered evidence, where the defendant shows, at the very least, that the new evidence discloses a strong probability that it will change the result if a new trial is granted.[5] Here, the trial court determined that no such probability existed.
 {¶ 30} The court said there was "no substantial likelihood or even slight likelihood that [Plair's] testimony would change anything or change any outcome of the trial in any way, shape, or form. I just didn't believe almost anything he said. And that's just the way it is. That's part of the reason I brought him back [from prison] for the testimony. And it's because I wanted him to be able — to have a chance to hear him. I couldn't make that determination. His affidavit seemed a little fishy in the first place. But his testimony is not credible in any sense of the word."
 {¶ 31} The trial court heard all the evidence at trial, including the testimony by the state's witnesses that Reid was the shooter. The court was in the best position to *Page 6 
judge the credibility of the trial witnesses, and to judge Plair's credibility at the hearing on the motion for a new trial.
 {¶ 32} Given its finding that the testimony of Reid's prison-block mate was utterly incredible, the court reasonably concluded that the evidence would not have caused Reid to be acquitted.[6] Consequently, we hold that the trial court did not abuse its discretion in denying Reid's motion for a new trial.
 {¶ 33} Accordingly, we overrule the assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
SUNDERMANN, P.J., and DiNKELACKER, J., concur.
[1] State v. Reid, 1st Dist. No. C-050465, 2006-Ohio-6450, discretionary appeal not allowed, 113 Ohio St.3d 1468, 2007-Ohio-1722,864 N.E.2d 654.
[2] State v. Reid (Dec. 12, 2007), 1st Dist. No. C-070011.
[3] State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 85.
[4] State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
[5] LaMar, supra; see, also, State v. Petro (1947), 148 Ohio St. 505,76 N.E.2d 370, syllabus.
[6] See State v. Russell (1990), 67 Ohio App.3d 81, 585 N.E.2d 995;State v. Martin, 2nd Dist. No. 20383, 2005-Ohio-209. *Page 1