[Cite as *State v. Smith*, 2014-Ohio-1955.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130239 |
| | | TRIAL NO. B-1107121 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| ANTRONE SMITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 9, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro,* for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge**.

{¶1} Defendant-appellant Antrone Smith appeals the judgment of the Hamilton County Court of Common Pleas convicting him of murder. He was convicted after a jury trial.

### Damarcus's Injuries and Death

{¶2} In August 2009, Smith and Latricia Jackson had their fourth child, Damarcus Jackson. Soon after Damarcus was born, temporary custody was granted to the Hamilton County Department of Job and Family Services ("HCJFS"). Damarcus was placed in foster care, in the home of Latosha Tye, while services were offered to reunite Damarcus with Smith and Jackson.

{¶3} Tye testified that when Damarcus first came to her home, he was a healthy and happy child. But in July 2011, Smith and Jackson were granted a 30-day period of temporary custody in anticipation of their gaining permanent custody. Approximately one week into the 30-day visitation, Damarcus required hospitalization for a seizure. When Tye visited Damarcus in the hospital, she observed that he had a black eye and a bruise on his back.

{¶4} After the hospitalization, Damarcus was released back into the care of Smith and Jackson. On October 21, 2011, Smith called 911 to report that Damarcus had suffered a seizure. When emergency personnel arrived at the residence, Damarcus was unresponsive. Smith informed them that he had administered an anti-seizure medication and had attempted cardiopulmonary resuscitation. Damarcus was immediately taken to the hospital emergency room, where he was pronounced dead.

{¶5} The next day, police questioned Smith about the events preceding Damarcus's death. Smith stated, "I did it." When asked what he had done, Smith stated that he had punched Damarcus in the stomach.

2

{¶6} At trial, the deputy coroner identified a large number of injuries on Damarcus's body. She testified that Damarcus had died as a result of trauma to his abdominal area and that the injury had probably occurred within 24 to 48 hours before his death. The trauma, which was consistent with a punch, had caused a portion of Damarcus's intestinal tract to hemorrhage and to cease functioning. The doctor concluded that the manner of death had been homicide.

{¶7} Latricia Jackson testified that Smith had abused Damarcus numerous times. According to Jackson, Smith had treated Damarcus differently from their other children because Smith believed he was not Damarcus's father. She stated that, on the day of his death, Damarcus's abdomen was distended and he had walked with an unusual gait.

{¶8} The jury found Smith not guilty of aggravated murder with a death-penalty specification, but it found him guilty of the lesser offense of murder. The trial court sentenced Smith to a prison term of 15 years to life.

## Motion to Suppress

{¶9} In his first assignment of error, Smith argues that the trial court erred in overruling his motion to suppress the statement he had given to police the day after Damarcus's death.

{¶10} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by some competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's judgment, whether the facts satisfy the applicable legal standard. *Id.*

{¶11} Smith first argues that he had invoked his right to counsel before the interrogation and that the investigating officers had therefore improperly elicited the statement.

{¶12}     Once a suspect clearly and unambiguously invokes his right to counsel, police must immediately cease questioning.  *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).  If a suspect's reference to an attorney is ambiguous or equivocal "in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," police do not need to stop their questioning.  *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

{¶13}     In the case at bar, Smith did not clearly and unambiguously invoke his right to counsel.  At the beginning of the interview, before Smith had been advised of his rights, he stated that an attorney had advised him not to talk.  But Smith then indicated that the attorney in question had not represented him but was rather the attorney assigned to handle the dependency and neglect case filed by HCJFS.

{¶14}     Smith was then informed of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  After being given the *Miranda* warnings, Smith signed a form indicating that he understood his rights, and he continued to speak to the investigating officers.  Under these circumstances, there was no infringement of Smith's rights.

{¶15}     But Smith further argues that, even if his right to counsel had not been violated, his statement was nonetheless involuntary and therefore subject to suppression.

{¶16}     The voluntariness of a suspect's waiver of counsel and his statements to police are both measured by a totality-of-the-circumstances test.  *State v. Eley*, 77 Ohio St.3d 174, 178, 672 N.E.2d 640 (1996).  Evidence of coercion or overreaching by the police is necessary for a finding of involuntariness.  *State v. Hill*, 64 Ohio St.3d 313, 318, 595 N.E.2d 884 (1992), citing *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

4

{¶17} Here, there was no showing of coercion or overreaching. The interview was relatively short, Smith was given breaks, and there was nothing in the record to suggest intimidation on the part of the officers. Thus, the trial court did not err in denying the motion to suppress, and we overrule the first assignment of error.

## Other-Acts Evidence

{¶18} In his second assignment of error, Smith argues that the trial court erred in admitting improper prior-acts evidence. Specifically, he contends that the state was allowed to adduce inadmissible evidence about previous injuries he had inflicted on Damarcus.

{¶19} Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Under this rule, evidence of prior violent acts may be admitted to demonstrate the animosity harbored by the defendant toward the victim and thus to show a motive to commit assault. *See, e.g. State v. Mills,* 5th Dist. Richland No. 10CA119, 2011-Ohio-5793, ¶ 110.

{¶20} In the instant case, the trial court did not err in admitting the other-acts evidence. Latricia Jackson's testimony indicated that Smith had engaged in a pattern of abusing Damarcus because he doubted that he was the child's father. This evidence thus established a motive for the felonious assault in this case and demonstrated that Smith had acted knowingly in inflicting the fatal injury. Moreover, in light of the overwhelming evidence of guilt, there was no undue prejudice in the admission of the other-acts evidence. Accordingly, we overrule the second assignment of error.

## Photographs

{¶21}     In his third assignment of error, Smith argues that the trial court erred in admitting gruesome autopsy photographs into evidence.  He contends that photographs depicting Damarcus's body with its skin removed violated his right to a fair trial.

{¶22}     This assignment is without merit.  As this court has held, properly authenticated photographs, even if they are gruesome, may be admissible if they assist the trier of fact in determining the issues, "as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." *State v. Reid*, 1st Dist. Hamilton No. C-0050465, 2006-Ohio-6450, ¶ 26, quoting *State v. Maurer,* 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), paragraph seven of the syllabus.

{¶23}     Here, the photographs were properly admitted.  The state alleged that Smith had caused the death of Demarcus through internal injuries.  The photographs were thus relevant in depicting those injuries and in demonstrating how the alleged trauma to the abdomen had led to Demarcus's death.  The trial court carefully reviewed each of the challenged photographs and determined that their probative value outweighed the danger of undue prejudice.  We find no error in the court's determination.  And once again, in light of the other evidence adduced at trial, any error in the admission of certain photographs was harmless beyond a reasonable doubt.  The third assignment of error is therefore overruled.

## Sufficiency and Weight of the Evidence

{¶24}     In his fourth and final assignment of error, Smith argues that his conviction was based on insufficient evidence and was against the manifest weight of the evidence.

{¶25}     In reviewing the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in

6

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Waddy*, 63 Ohio St.3d 424, 430, 588 N.E.2d 819 (1992). To reverse a conviction on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding the defendant guilty. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶26}  The murder statute, R.C. 2903.02(B), provides that "[n]o person shall cause the death of another as the proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."  In this case, the underlying felony of violence was felonious assault under R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."

{¶27}  In the case at bar, the conviction was in accordance with the evidence. The state presented evidence that Smith had punched Damarcus in the stomach and that the cause of death was trauma consistent with such a blow. At trial, Smith essentially conceded that he had committed murder in an apparent attempt to escape conviction for the more serious charge of aggravated murder. Under these circumstances, we cannot say that the jury lost its way in finding him guilty, and we overrule the fourth assignment of error.

## Conclusion

{¶28}  We affirm the judgment of the trial court.

Judgment affirmed.

**DINKELACKER** and **FISCHER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.