[Cite as *State v. Madden*, 2022-Ohio-2638.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210537 |
| | | TRIAL NO. B-2100164 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| KEAJZUAN MADDEN, | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:    August 3, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Mary Stier*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*The Law Office of John D. Hill* and *John D. Hill, Jr.*, for Defendant-Appellee.

**WINKLER, Judge**.

{¶1} Defendant-appellee Keajzuan Madden was indicted for aggravated burglary under R.C. 2911.11(A)(2), with two firearm specifications. The trial court granted his motion to suppress his statements to the police. The state has appealed that decision under R.C. 2945.67 and Crim.R. 12(K). We find no merit in the state's assignment of error, and we affirm the trial court's judgment.

{¶2} In its sole assignment of error, the state contends that the trial court erred in granting Madden's motion to suppress. It argues that after invoking his right to counsel, Madden waived that right by initiating further communication with the police. This assignment of error is not well taken.

{¶3} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Richardson*, 1st Dist. Hamilton No. C-200187, 2021-Ohio-2751, ¶ 13.

{¶4} A suspect who has "expressed his desire to deal with police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police." *Arizona v. Roberson*, 486 U.S. 675, 677, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), quoting *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The police may not reinitiate an interrogation under the guise of a generalized discussion about the investigation. *State v. Van Hook*, 39 Ohio St.3d 256, 259, 530 N.E.2d 883 (1988); *State v. Williams*, 1st Dist. Hamilton Nos. C-060631 and C-060668, 2007-Ohio-5577, ¶ 34. The suspect

himself must initiate dialogue with the authorities and must knowingly and voluntarily waive his right to counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-1046, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983); *Van Hook* at 259; *Williams* at ¶ 34.

**{¶5}** The United States Supreme Court has established this rule as a "bright-line test" for dealing with defendants who invoke their right to counsel. "Simply stated, if a defendant requests counsel, the police must stop all questioning and interrogation immediately." *State v. Knuckles*, 65 Ohio St.3d 494, 495, 605 N.E.2d 54 (1992). Interrogation is "any words or actions on the part of the police * * * that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

**{¶6}** This rule involves two distinct inquiries. First, courts must determine whether the accused unequivocally invoked his right to counsel. Second, if the accused invoked his right to counsel, a court may admit the accused's statements into evidence only if he initiated further discussions with the police, and knowingly and intelligently waived the right he had invoked. *Smith v. Illinois*, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *Knuckles* at 496. The burden of showing that the defendant waived his rights remains on the prosecution. *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

**{¶7}** The record shows that Madden was under investigation for an incident in which three men knocked on the door of a residence. When the victim opened the door, the men rushed inside. They held her at gunpoint and demanded money. Eventually, the men fled from the residence with the victim's purse, approximately $1,500 in cash, and a cell phone. Madden was subsequently arrested.

**{¶8}** He was interviewed at the police station by two detectives. That interview was recorded, and the video was admitted into evidence.

**{¶9}** Before starting the interview, the detectives read Madden his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and had him sign a written acknowledgement of those rights. Madden explained that he had come to Cincinnati from Mississippi to visit his wife. When the detectives began asking about the incident in question, Madden claimed that he had not been involved. After his continued denials, the detectives stated that they were going to interview other suspects. They then left him alone in the interview room for approximately 55 minutes.

**{¶10}** The detectives then returned to the room and began interviewing Madden in a more aggressive manner. They told him that two of his alleged co-conspirators, his wife, and her cousin, had talked to them and had implicated Madden as the ringleader. One of the detectives stated, "If you want the whole thing, I'll type it up and that's what you're going to get." He added, "And when we go to court, I can say, this is who cooperated, to the judge, this is who manned up, and this is who didn't man up." Madden then asked to see a lawyer.

**{¶11}** The detective then stated, "If that's what you want to do. I mean, I would rather just get your side of the story." Madden replied, "Uh huh," and the detective asked, "You don't want to tell me your side of the story." Madden stated that he wanted to tell his side of the story, but with a lawyer present. The detective responded, "That's fine. All right. I'll type up the paperwork. You're going to go to jail for aggravated robbery."

**{¶12}** The detectives then stood up in unison and started to walk out of the room. Madden again said that he wanted to speak to a lawyer. The detectives told him that they did not have time to wait for a lawyer to come to talk to Madden. They said that they would charge him, and then he could have a lawyer appointed for him.

**{¶13}** Madden then asked, "How many years is it for this or whatever?" One of the detectives told him that "it's the same charge as murder. That's why we wanted to talk to you to get your side of the story." The other detective added, "It's a big charge." The first detective asked him if he wanted to "sit there and think about it for a minute and I'll come back and see you and see if you want to talk to me." Madden replied, "Yeah."

**{¶14}** The detectives left the room for a few minutes. Upon reentering, the first detective stated, "Do you want an attorney or do you want to talk to us?" When Madden did not answer right away, the detectives told him that if Madden had an attorney, they would call the attorney. If not, he would go to the jail, and then he would get an attorney. They told him if he went to jail, he would see a judge the following day. The first detective added that if he wanted an attorney, that was his right, and if he wanted to talk, they would talk to him. Madden answered, "Alright." The officer asked if he should sit down, Madden answered, "Yes." He then confessed to his involvement in the robbery.

**{¶15}** The parties do not dispute that the detectives read Madden his *Miranda* rights. In ruling on the motion to suppress, the trial court stated, "Therefore, the sole issue for the Court to decide is whether the Detectives interrogated Mr. Madden after he invoked his right to counsel. This court determines that they did." We agree.

{¶16} The record shows that Madden unequivocally and unambiguously invoked his right to counsel. *See State v. Carr*, 1st Dist. Hamilton No. C-090109, 2010-Ohio-2764, ¶ 18-20. Nevertheless, the trial court found that the police asked him several times whether he wanted to talk to them, and stated that they wanted to talk to him, a finding supported by competent, credible evidence. Their statements were calculated to elicit an incriminating response by Madden. The detectives made numerous statements that went far beyond inquiries or statements relating to "routine incidents of the custodial relationship," which do not generally "initiate" a conversation about the investigations. *See Bradshaw*, 462 U.S. at 1045, 103 S.Ct. 2830, 77 L.Ed.2d 405.

{¶17} The state argues that after the detectives left the room the second time, telling him to "think about it," Madden initiated the discussion about the investigation by asking what the penalty was for the offenses of which he was accused. But this question only occurred after he had asked for an attorney three times. The detectives continued to ask him to tell them his story and repeatedly told him about the severity of the charges. Further, it only occurred after the detectives said they did not have time to wait for him to talk to an attorney.

{¶18} In contrast is *Williams*, 1st Dist. Hamilton Nos. C-060631 and C-060668, 2007-Ohio-5577, in which this court held that the defendant initiated the dialogue and voluntarily waived his rights. In that case, the defendant asked for a lawyer, and questioning ceased. Subsequently, the detective who had been interviewing the defendant brought the defendant a jail uniform and did not interrogate the defendant. The defendant, without any prompting, stated that he wanted to talk to the detective. The detective told the defendant that if he wanted to

6

talk to him, the defendant would have to waive his rights. The defendant still indicated his willingness to talk. We stated that the defendant "evinced a willingness and a desire for generalized discussion about the investigation." *Id.* at ¶ 36, quoting *Bradshaw* at 1045-1046. In this case, Madden never indicated a willingness to discuss the robbery without an attorney present.

{¶19} The bright-line test set out by the United States Supreme Court was to prevent "the police from wearing down and confusing the defendant to obtain a waiver of his rights." *Knuckles*, 65 Ohio St.3d at 496, 605 N.E.2d 54, citing *Smith*, 469 U.S. at 98, 105 S.Ct. 490, 83 L.Ed.2d 488. The video recording shows that was exactly what occurred in this case. Consequently, we overrule the state's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**MYERS, P.J.** and **BOCK, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.