[Cite as *State v. Gill*, 2024-Ohio-2792.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230520 |
| | | TRIAL NO. B-2005012 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| AARON GILL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Sentences Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: July 24, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk,* for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Aaron Gill appeals from the trial court's judgment convicting him upon no-contest pleas of having a weapon while under a disability ("WUD"), trafficking in heroin, possession of heroin, trafficking in cocaine, possession of cocaine, trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, aggravated trafficking in drugs, aggravated possession of drugs, and multiple firearm and major-drug-offender ("MDO") specifications, and imposing sentence for those offenses.

{¶2} Gill raises nine assignments of error for our review. We find no merit to Gill's assignments of error challenging the trial court's denial of his motion for a continuance to obtain an independent analysis of recovered drug evidence and his motions to suppress. And we decline to address Gill's assignments of error challenging the trial court's denial of his motion for relief from prejudicial joinder of counts and the trial court's issuance of a nunc pro tunc sentencing entry because they are moot.

{¶3} The remainder of Gill's assignments of error challenge the sentences imposed. We find no merit to his argument that the trial court failed to provide him with the required Reagan Tokes notifications at sentencing. But Gill's other assignments of error challenging the sentences imposed have merit. First, the trial court erred in imposing consecutive sentences without making the required findings. Next, Gill's convictions for trafficking in heroin and possession of heroin were allied offenses of similar import, as were his convictions for trafficking in cocaine and possession of cocaine, trafficking in a fentanyl-related compound and possession of a fentanyl-related compound, and aggravated trafficking in drugs and aggravated

possession of drugs. The trial court erred in imposing separate sentences for each group of offenses.

**{¶4}** Third, the trial court erred in imposing multiple additional prison terms for each of Gill's firearm specifications. It was limited to imposing one additional period of imprisonment for the firearm specifications because the underlying offenses were committed as part of the same act or transaction. And last, the trial court erred in imposing additional prison terms for each of the MDO specifications. An additional prison term was only permitted to be imposed for the offenses of trafficking in a fentanyl-related compound and possession of a fentanyl-related compound.

**{¶5}** While the trial court's underlying judgment is affirmed, all sentences are reversed with the exception of the sentence imposed for the WUD offense, and the cause is remanded for resentencing.

## I. Factual and Procedural Background

**{¶6}** On September 9, 2020, Felisa Tremble was shot and killed while walking across Linn Street in Cincinnati. Tremble, an innocent bystander, was struck by a bullet that was fired at a group of people with whom the shooter had been arguing. The shooting was caught on video, and the video was used by the police to identify Gill as the shooter.

**{¶7}** Gill was arrested for his role in Tremble's shooting on September 25, 2020. After Gill was arrested, Cincinnati police officers obtained consent from Gill's girlfriend Keiarra Turner to search the apartment where Gill and Turner resided. During the search, the officers recovered a firearm and a large quantity of various drugs packaged individually.

{¶8} On October 2, 2020, Gill was charged in an indictment with 16 felony offenses. The first seven offenses related to the shooting that resulted in Tremble's death, and included charges for two counts of murder, WUD, and four counts of felonious assault. With the exception of the WUD charge, each charge included two firearm specifications. The latter nine offenses concerned the contraband recovered during the search of Gill's apartment. Gill was charged with WUD, trafficking in heroin, possession of heroin, trafficking in cocaine, possession of cocaine, trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, aggravated trafficking in drugs, and aggravated possession of drugs. Each trafficking and possession charge included a firearm specification and an MDO specification.

{¶9} Gill filed a bare-bones motion to suppress his seizure and arrest on October 16, 2020. That same date, he filed a supplemental motion to suppress arguing that statements he made while in police custody were not voluntary, were taken in violation of his Fifth Amendment right against self-incrimination, and were given without the benefit of counsel.

{¶10} Due to delays caused by the COVID pandemic and the granting of multiple continuances, resolution of the charges against Gill was greatly delayed. After the last continuance was granted, the charges against Gill were scheduled for a jury trial on August 28, 2023. On that date, Gill filed a motion to bifurcate counts 1 through 7 of his indictment from counts 8 through 16. After hearing argument from counsel, the trial court denied the motion to bifurcate. The trial court then held a hearing on the previously filed motions to suppress.

{¶11} When the parties returned to court on August 29, 2023, the trial court announced its decision denying the motions to suppress. It also denied an oral motion

4

made by Gill for a continuance to conduct an independent laboratory analysis of the drugs recovered during the search of Gill's apartment. After the trial court announced these rulings, the state requested a continuance, representing to the trial court that the witnesses necessary for the state to proceed on the shooting offenses, counts 1 through 7, had failed to appear. Over Gill's objection, the trial court granted the motion for a continuance with respect to counts 1 through 7. But it ordered that the trial proceed that day on the drug offenses, counts 8 through 16, effectively bifurcating the proceedings as Gill had previously requested. Despite his previous request for bifurcation, Gill objected to the court's decision to continue counts 1 through 7.

{¶12} Gill then alleged that his counsel was ineffective and asked the trial court to allow defense counsel to withdraw so that he could obtain new counsel. The trial court denied Gill's request, noting both defense counsel's extensive experience and the age of the case. Shortly thereafter, Gill decided to enter no-contest pleas to counts 8 through 16 in return for the state dismissing the MDO specifications to counts 9 and 10 of the indictment concerning trafficking in heroin and possession of heroin.

{¶13} The trial court conducted a plea colloquy and accepted Gill's no-contest pleas. The trial court pronounced sentence as follows:

| Count | Charge | Sentence |
|-------|--------|----------|
| 8 | WUD | Three years' imprisonment |
| 9 | Trafficking in Heroin | Four years' imprisonment, plus a consecutive one year of imprisonment for the firearm specification |

| 10 | Possession of Heroin | Five years' imprisonment, plus a consecutive one year of imprisonment for the firearm specification[1] |
|---|---|---|
| 11 | Trafficking in Cocaine | 11 years' imprisonment, plus a consecutive three years' imprisonment for the MDO specification, plus a consecutive one year of imprisonment for the firearm specification |
| 12 | Possession of Cocaine | 11 years' imprisonment, plus a consecutive three years' imprisonment for the MDO specification, plus a consecutive one year of imprisonment for the firearm specification |
| 13 | Trafficking in a Fentanyl-Related Compound | 11 years' imprisonment, plus a consecutive three years' imprisonment for the MDO specification, plus a consecutive one year of imprisonment for the firearm specification |
| 14 | Possession of a Fentanyl-Related Compound | 11 years' imprisonment, plus a consecutive three years' imprisonment for the MDO |

---

[1] The sentence set forth in the trial court's sentencing entry for this offense does not match the sentence pronounced in open court. The sentencing entry states that the sentence imposed for this offense was an indefinite term of 11 to 16.5 years' imprisonment, plus a consecutive one year of imprisonment for the firearm specification. "[A] trial court's sentence is contrary to law when it imposes a sentence in the sentencing entry different from the sentence announced at the sentencing hearing." *State v. Jackson*, 1st Dist. Hamilton No. C-140178, 2014-Ohio-5008, ¶ 22. While the sentence imposed for this offense is contrary to law, this error is remedied through our resolution of Gill's seventh assignment of error, in which he argues that this offense is an allied offense of similar import to the offense of trafficking in heroin in count 9. As discussed later in this opinion, these two offenses are allied offenses of similar import and the sentences imposed must be reversed because the trial court erred in failing to merge the offenses at sentencing.

| | | |
|---|---|---|
| | | specification, plus a consecutive one year of imprisonment for the firearm specification |
| 15 | Aggravated Trafficking in Drugs | 11 years' imprisonment, plus a consecutive three years' imprisonment for the MDO specification, plus a consecutive one year of imprisonment for the firearm specification |
| 16 | Aggravated Possession of Drugs | 11 years' imprisonment, plus a consecutive three years' imprisonment for the MDO specification, plus a consecutive one year of imprisonment for the firearm specification |

The trial court ordered the sentences for trafficking in heroin and trafficking in a fentanyl-related compound in counts 9 and 13 to be served consecutively, and all remaining sentences were ordered to be served concurrently with each other and with the sentences imposed in counts 9 and 13.

{¶14} The trial court's sentencing entry stated that the aggregate sentence imposed was 20-23.5 years' imprisonment. The trial court subsequently issued a nunc pro tunc entry reflecting an aggregate sentence of 20 to 25.5 years' imprisonment.

{¶15} Gill now appeals. After he filed a notice of appeal, the remaining charges in counts 1 through 7 of the indictment were dismissed for want of prosecution.

## II. Motion For a Continuance

{¶16} In his first assignment of error, Gill argues that the trial court erred in denying his motion to continue the trial so that he could conduct an independent analysis of the drugs recovered from his apartment.

7

{¶17} We review the trial court's denial of a motion for a continuance for an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), syllabus; *State v. Pittman*, 1st Dist. Hamilton No. C-220460, 2023-Ohio-1990, ¶ 9. "The term 'abuse of discretion' implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Garry v. Borger*, 1st Dist. Hamilton No. C-220069, 2023-Ohio-905, ¶ 14, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990). Factors to be considered when ruling on a motion for a continuance include:

> the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68.

{¶18} On the morning that his case was scheduled for trial, Gill requested a continuance to obtain an independent laboratory analysis of the drugs found in his apartment. When denying the motion, the trial court stated, "I don't think anybody could say that you haven't had more than ample opportunity to do that. The defendants [sic] have had more than ample opportunity to ask for that. I view that as a delay tactic, quite frankly."

{¶19} We find no abuse of discretion in the trial court's denial of Gill's requested continuance. Gill received the state's response to his request for discovery in February 2021. That response indicated that the state intended to rely on a report

regarding the recovered drugs at trial. Yet Gill waited approximately two-and-a-half years to request a continuance to obtain an independent lab test on the recovered drugs. Gill's delayed request to independently test the drugs supports the trial court's determination that he sought the continuance as a delay tactic. Additionally, Gill had previously been granted multiple continuances during the pendency of the case. Considering the age of the case, as well as the fact that the trial court had a jury waiting to report to the courtroom, continuing the trial would have been an inconvenience to the court and the state.

{¶20} The trial court did not act unreasonably, arbitrarily, or unconscionably in denying Gill's request for a continuance. *See Garry*, 1st Dist. Hamilton No. C-220069, 2023-Ohio-905, at ¶ 14. The first assignment of error is overruled.

### III. Motion to Bifurcate

{¶21} In his second assignment of error, Gill argues that the trial court erred in denying his motion for relief from prejudicial joinder of counts. We review joinder and severance issues for an abuse of discretion. *State v. Chasteen*, 1st Dist. Hamilton No. C-230174, 2024-Ohio-909, ¶ 27.

{¶22} Crim.R. 8(A) allows for the joinder of offenses. It provides that a group of offenses may be charged in the same indictment "if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A); *see Chasteen* at ¶ 29.

{¶23} Gill moved to bifurcate, or sever, the charges in counts 1 through 7 of his indictment concerning his role in Tremble's shooting on September 9, 2020, from the

9

charges in counts 8 through 16 of the indictment concerning the contraband recovered during the search of his apartment on September 25, 2020. Gill argued that these two groups of charges were not of the same or similar character, were not based on the same transaction or act, and were not based on actions that were part of a common scheme or plan or part of a course of criminal conduct. He further argued that joinder of these charges would be prejudicial and confusing to a jury.

{¶24} The trial court overruled Gill's motion to bifurcate, finding that the two groups of crimes were connected, that the jury would be able to individually determine each count, and that joinder was required by law. The day after the trial court overruled the motion to bifurcate, the state requested a continuance because witnesses necessary for it to proceed on the charges in counts 1 through 7 of the indictment failed to appear. The trial court granted the motion for a continuance with respect to only counts 1 through 7 of the indictment. It ordered, over Gill's objection, the state to proceed that day on counts 8 through 16.

{¶25} The state contends that this assignment of error is moot because the two groups of charges that Gill sought to bifurcate were never in fact joined for trial purposes. We agree. The trial court's grant of the continuance with respect to only counts 1 through 7 of the indictment had the same practical effect as granting the motion to bifurcate. Gill acknowledged as much when he objected to the grant of a continuance of counts 1 through 7 arguing that the court's order was in contravention of its earlier determination that the law favored joinder of the counts.

{¶26} Because the trial court, by granting a continuance as to only one group of charges, effectively severed the charges, Gill has already been accorded the requested relief. *See In re A.B.*, 1st Dist. Hamilton Nos. C-190327, C-190328, and C-

190329, 2020-Ohio-3904, ¶ 8 (an assignment of error is moot where the court cannot provide the appellant with any meaningful relief).

{¶27} Gill contends that "[o]nce the court allowed joinder of all these unrelated charges, [Gill] had no realistic choice other than to enter a no-contest plea agreement due to prejudice he would have received from a jury had he chosen to go to trial with all the unrelated charges joined together." Gill's assertion is belied by the record. The trial court had already continued counts 1 through 7 before Gill elected to enter no-contest pleas to counts 8 through 16. Consequently, Gill faced no potential prejudice from joinder of offenses at the time that he elected to plead no contest.

{¶28} Accordingly, we hold that Gill's second assignment of error is moot.

### IV. Trial Court's Rulings on Other Pretrial Motions

{¶29} Gill argues in his third assignment of error that the trial court erred "by denying his pretrial motions to continue the case for trial, dismiss the case for want of prosecution, [and] withdraw the defense attorney."

{¶30} In support of this assignment of error, Gill provides citations to the transcript of docket and journal entries regarding his motions to suppress and motion to bifurcate, and he cites to pages in the transcript of proceedings concerning the trial court's denial of his motion for a continuance, motions to suppress, and request to obtain new defense counsel. We need not address the trial court's denial of Gill's motion for a continuance, motion to bifurcate, and motions to suppress, as Gill separately challenges the trial court's denial of those motions in independent assignments of error.

{¶31} With respect to the remaining rulings by the trial court that he seemingly challenges in this assignment of error, Gill provides no legal citations,

substantive arguments, or reasons as to why the trial court's rulings on those motions were in error.

**{¶32}** App.R. 16(A)(7) requires an appellant to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." And App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)."

**{¶33}** Because Gill has provided no argument in support of his contentions in this assignment of error, we disregard it. *See* App.R. 16(A)(7) and 12(A)(2); *State v. Covington*, 1st Dist. Hamilton No. C-190731, 2021-Ohio-2907, ¶ 24-25 (citing to App.R. 16(A)(7) and 12(A)(2) and declining to address specific arguments raised by appellant because he failed to make any substantive argument in support of the claims).

### V. Required Reagan Tokes Notifications

**{¶34}** In his fourth assignment of error, Gill argues that the trial court erred by failing to provide him with all of the Reagan Tokes notifications required by R.C. 2929.19(B)(2)(c) at sentencing.

**{¶35}** R.C. 2929.19(B)(2)(c) provides that if the trial court is imposing a non-life felony indefinite prison term, it must provide the five notifications set forth in the statute to the offender. The trial court in this case imposed a non-life felony indefinite prison term, so it was required to comply with R.C. 2929.19(B)(2)(c).

{¶36} "A trial court must advise a defendant of all five notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing," and "[t]he failure to advise the defendant of any of the five notifications constitutes error and a remand is necessary for the limited purpose of permitting the sentencing court to provide the mandatory notifications." *State v. Kelly*, 1st Dist. Hamilton No. C-200013, 2022-Ohio-3628, ¶ 9. Inclusion of the R.C. 2929.19(B)(2)(c) notifications in a plea entry is not sufficient to cure a trial court's failure to provide the notifications during the sentencing hearing. *State v. Searight*, 1st Dist. Hamilton No. C-230060, 2023-Ohio-3584, ¶ 7.

{¶37} Here, Gill's plea-and-sentencing hearings occurred back-to-back on the same day. The trial court proceeded immediately to sentencing after accepting Gill's no-contest pleas. At the plea phase of the hearing, the trial court provided the Reagan Tokes notifications required by R.C. 2929.19(B)(2)(c). However, the court did not restate the notifications at the sentencing phase of the hearing.

{¶38} The state contends that the trial court's provision of the required Reagan Tokes notifications during the plea colloquy in this case was sufficient because the plea colloquy and imposition of sentence occurred back-to-back at the same hearing. It argues that this case is distinguishable from *Searight*, where several months separated the plea-and-sentencing hearings.

{¶39} While the First District has not previously been confronted with this argument, it was addressed by the Fifth District in *State v. Stamaty*, 5th Dist. Fairfield No. 23 CA 36, 2024-Ohio-54. In *Stamaty*, the court found that providing the notifications at the plea hearing was sufficient under these circumstances, stating:

> Our review of the record confirms the trial court properly notified
> Stamaty regarding his indefinite sentence during its plea colloquy. T. 7-

13

9. Stamaty then waived his right to a separate sentencing hearing via a written plea of guilty and waiver. T. 12-13. The trial court did not repeat the same notifications during the sentencing phase of the hearing. This court has previously found, however, "[w]hen the trial court provides proper post-release control notification before accepting the defendant's guilty plea and then proceeds immediately to sentencing, the plea hearing and the sentencing hearing cannot, for purposes of the post-release control statutes, reasonably be deemed to have been conducted separately." *State v. Renne*, 5th Dist. Fairfield No. 2020CA00036, 2021-Ohio- 2648[,] ¶ 18[,] citing *State v. Dardinger*, 1st Dist. Hamilton No. C-160467, 2017-Ohio-1525, ¶ 13; *State v. Russell*, 10th Dist. Franklin No. 16AP-108, 2016-Ohio-3349, ¶ 9. We find the same is true regarding the notifications required before imposing an indefinite sentence. We therefore find Stamaty was properly notified of the appropriate factors regarding his indefinite sentence.

*Id*. at ¶ 9.

**{¶40}** The *Stamaty* court relied on our decision in *Dardinger* to conclude that providing the Reagan Tokes notifications at the plea phase of a joint plea-and-sentencing hearing was sufficient. In *Dardinger*, we considered the propriety of the trial court's provision of postrelease-control notifications during the plea phase of a joint plea-and-sentencing hearing. *Dardinger* at ¶ 12. We held that "when, as here, the trial court provided proper postrelease-control notification before accepting the defendant's guilty plea and then proceeded immediately to sentencing, the plea

hearing and the sentencing hearing cannot, for purposes of the postrelease-control statutes, reasonably be deemed to have been conducted separately." *Id.* at ¶ 13.

**{¶41}** While *Dardinger* involved postrelease-control notifications rather than Reagan Tokes notifications, this is a distinction without a difference. Both types of notifications are required by R.C. 2929.19(B)(2). If the plea-and-sentencing hearings cannot reasonably be deemed to have been conducted separately for purposes of the postrelease-control notifications, then it follows that they cannot reasonably be deemed to have been conducted separately for purposes of Reagan Tokes notifications. We follow *Dardinger* and *Stamaty* and hold that the trial court's provision of the R.C. 2929.19(B)(2)(c) notifications at the plea phase of a joint plea-and-sentencing hearing is sufficient.

**{¶42}** The trial court did not err by failing to provide Gill with the notifications required by R.C. 2929.19(B)(2)(c) at sentencing, and the fourth assignment of error is overruled.

## VI. Consecutive Sentences

**{¶43}** In his fifth assignment of error, Gill challenges the trial court's imposition of consecutive sentences.

**{¶44}** Gill contends that the trial court failed to make all the findings required by R.C. 2929.14(C) before imposing consecutive sentences. He concedes that he failed to object to the imposition of consecutive sentences at the sentencing hearing, and that he has accordingly forfeited all but plain error. *State v. McKinney*, 1st Dist. Hamilton No. C-210276, 2022-Ohio-849, ¶ 9. Plain error is an error that is plain and obvious and affected the outcome of the trial. *Id.*

**{¶45}** The trial court must make certain findings set forth in R.C. 2929.14(C)(4) before imposing consecutive sentences. Specifically, the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). The court must also find any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c). While a trial court must make the requisite findings, it is not required to provide reasons in support of those findings. *State v. Akins*, 1st Dist. Hamilton No. C-230302, 2024-Ohio-1491, ¶ 71.

**{¶46}** With respect to consecutive sentences, the trial court made the following statement at the sentencing hearing:

16

I've certainly considered the sentencing factors under 2929 of the Ohio Revised Code. There are some consecutive parts of this no matter what, but I will also make a consecutive finding because I believe it's necessary to protect the public and consistent with all the sentencing factors.

Having considered everything, you, in your statement, indicated that you knew this was a lot of drugs. This is big stuff. And then there's a gun thrown in there, too. So I think the following sentence is fair: [Court proceeds to impose sentence].

**{¶47}** The record establishes that the trial court failed to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentences. While the court found that consecutive sentences were necessary to protect the public, it failed to find that such sentences were not disproportionate to the seriousness of Gill's conduct and the danger he posed to the public. The trial court also failed to make one of the findings set forth in R.C. 2929.14(C)(4)(a)-(c).

**{¶48}** The trial court's failure to make the required findings before imposing consecutive sentences was plain error. Gill's fifth assignment of error is accordingly sustained.

### VII. Allied Offenses of Similar Import

**{¶49}** In his seventh assignment of error, Gill argues that the trial court erred by failing to merge multiple allied offenses of similar import. Because this assignment of error, as well as Gill's eighth assignment of error, challenge the sentences imposed, we address them out of order.

{¶50} Gill concedes that we are limited to a plain-error review because he failed to raise the issue of allied offenses before the trial court. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3 ("An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error[.]").

{¶51} Gill contends that the trial court erred by failing to merge his trafficking and possession convictions for each respective drug. Specifically, he contends that the trial court should have merged his convictions for trafficking in heroin and possession of heroin, his convictions for trafficking in cocaine and possession of cocaine, his convictions for trafficking in a fentanyl-related compound and possession of a fentanyl-related compound, and his convictions for aggravated trafficking in drugs and aggravated possession of drugs.

{¶52} The state concedes that the trial court should have merged these respective offenses and that it committed plain error in failing to do so.

{¶53} Pursuant to R.C. 2941.25, separate convictions are not permitted for allied offenses of similar import that are committed neither separately nor with a separate animus. *State v. Bishop*, 1st Dist. Hamilton No. C-220231, 2023-Ohio-947, ¶ 14; *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. In determining whether offenses are subject to merger, "[t]he conduct, the animus, and the import must all be considered." *Ruff* at ¶ 31.

{¶54} Following our review of the record, we agree with both Gill and the state and hold that the trial court erred in failing to merge Gill's respective trafficking and possession convictions. All drugs were found inside the same container in Gill's apartment. The same drugs supported both the trafficking and possession convictions

for each individual drug, and the offenses were not committed separately or with a separate animus. *See State v. Mitchell*, 1st Dist. Hamilton Nos. C-220155 and C-220156, 2022-Ohio-4355, ¶ 24 ("Ohio courts have long held that, in most instances, trafficking and possession charges based on the same contraband are allied offenses requiring merger.").

**{¶55}** The seventh assignment of error is, therefore, sustained.

### VIII. Merger of Specifications

**{¶56}** In his eighth assignment of error, Gill argues that the trial court erred in failing to merge his firearm and MDO specifications.

### A. Firearm Specifications

**{¶57}** Gill contends that all of his firearm specifications were subject to merger. The state agrees and concedes that the trial court should have merged these firearm specifications.

**{¶58}** Gill pled no contest to firearm specifications providing that he had a firearm on or about his person or under his control while committing the respective trafficking and possession offenses. R.C. 2929.14(B)(1)(a)(iii) provides that the trial court shall impose a one-year prison term on an offender who is convicted of or pleads guilty to this type of specification.

**{¶59}** Where an offender is convicted of or pleads to more than one of this type of specification, R.C. 2929.14(B)(1)(b) governs how to proceed. *See State v. Williams*, 1st Dist. Hamilton No. C-180588, 2020-Ohio-1368, ¶ 16. This provision states "[e]xcept as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." R.C. 2929.14(B)(1)(b). A

19

transaction, for purposes of R.C. 2929.14(B)(1)(b), has been defined as "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." *Williams* at ¶ 16, quoting *State v. Wills*, 69 Ohio St.3d 690, 691, 635 N.E.2d 370 (1994), quoting *State v. Caldwell*, 9th Dist. Summit No. 14720, 1991 Ohio App. LEXIS 5879, 32 (Dec. 4, 1991).

**{¶60}** R.C. 2929.14(B)(1)(g), which contains the exception referenced in section (B)(1)(b), provides that more than one prison term may be imposed for multiple firearm specifications if an offender pleads guilty to or is convicted of two or more felonies and "one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape."

**{¶61}** As the state concedes, all drugs were recovered from the same container in Gill's apartment and Gill committed all offenses in this case as part of the same act or transaction. As such, unless the exception set forth in R.C. 2929.14(B)(1)(g) applies, the trial court could not have imposed more than one prison term for the firearm specifications. Gill was not convicted of any of the specified felony offenses in R.C. 2929.14(B)(1)(g). Accordingly, the trial court was only permitted to impose one prison term on Gill for the various firearm specifications to which he pled no contest, and those specifications should have merged at sentencing.

### B. Major-Drug-Offender Specifications

**{¶62}** We now turn to Gill's argument that the trial court erred in failing to merge the sentences imposed for the MDO specifications. The state seems to concede this alleged error. However, as explained below, we find error in the failure to merge the sentences imposed for the MDO specifications only with regard to counts 13 and

14, the fentanyl counts, because those are the only counts for which the law authorizes an additional prison term for an MDO specification. Although not specifically argued by Gill, we also find error with the additional prison terms imposed by the trial court for the MDO specifications attached to counts 11, 12, 15, and 16 because the law does not permit the imposition of additional prison terms for those counts.

{¶63} Before analyzing Gill's argument, we must examine exactly how he was found to be a major drug offender, as the Revised Code separately provides for the classification of an offender as a major drug offender and an MDO specification.

{¶64} Not only did Gill plead no contest to MDO specifications attached to counts 11 through 16, but the underlying offenses in these counts, as well counts 9 and 10 for trafficking in and possession of heroin, classified Gill as a major drug offender.

{¶65} For example, for Gill's conviction for trafficking in cocaine in count 11, the indictment provided that Gill trafficked in cocaine in violation of R.C. 2925.03(A)(2), and that the amount of cocaine involved "equaled or exceeded 100 grams." R.C. 2925.03(C)(4) sets forth the penalties for trafficking in cocaine based on the amount of the drug involved, and subdivision (C)(4)(g) provides that "[i]f the amount of the drug involved equals or exceeds one hundred grams of cocaine * * *, trafficking in cocaine is a felony of the first degree, *the offender is a major drug offender*, and the court shall impose as a mandatory prison term a maximum first degree felony mandatory prison term." (Emphasis added.) Gill pled no contest to this count that classified him as a major drug offender, and he also pled no contest to an MDO specification connected with this count. The same is true for all of Gill's trafficking and possession convictions—based on the amount of the drugs that the indictment alleged he either trafficked or possessed, R.C. 2925.03 (for the trafficking

convictions) and R.C. 2925.11 (for the possession convictions), classified him as a major drug offender. And other than the convictions in counts 9 and 10 concerning heroin, Gill separately pled no contest to MDO specifications.

**{¶66}** The plain language of R.C. 2941.1410(B) provides that a mandatory prison term may only be imposed for an MDO specification if the indictment specifies that the offender is a major drug offender and the drug involved is a fentanyl-related compound or mixture thereof. The statute provides:

(A) Except as provided in sections 2925.03 and 2925.11 and division (E)(1) of section 2925.05 of the Revised Code, the determination by a court that an offender is a major drug offender is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender is a major drug offender.

* * *

(B) Imposition of a three, four, five, six, seven, or eight-year mandatory prison term upon an offender under division (B)(9)[2] of section 2929.14 of the Revised Code, pursuant to determination by a court that an offender is a major drug offender, is precluded unless the indictment, count in the indictment, or information charging the offender with the violation of section 2925.03, 2925.05, or 2925.11 of the Revised Code specifies that the offender is a major drug offender *and that the drug involved in the violation is a fentanyl-related compound or a*

---

[2] There appears to be a typo in the statute. R.C. 2929.14(B)(9) concerns the imposition of a prison term when an offender convicted of felonious assault is also convicted of or pleads guilty to a specification that the offender used an accelerant in committing the offense. R.C. 2929.14(B)(11), as explained in this opinion, concerns the imposition of an additional sentence for an MDO specification.

*compound, mixture, preparation, or substance containing a fentanyl-related compound.*

R.C. 2941.1410(A) and (B).

**{¶67}** The plain language of R.C. 2929.14(B)(11) states that the trial court shall impose an additional mandatory prison term "if the drug involved in the violation is a fentanyl-related compound or a compound, mixture, preparation, or substance containing a fentanyl-related compound" and if the offender also is convicted of or pleads to the type of specification provided for in R.C. 2941.1410. R.C. 2929.14(B)(11) provides:

> If an offender is convicted of or pleads guilty to a felony violation of section 2925.03 or 2925.05 of the Revised Code or a felony violation of section 2925.11 of the Revised Code for which division (C)(11) of that section applies in determining the sentence for the violation, *if the drug involved in the violation is a fentanyl-related compound or a compound, mixture, preparation, or substance containing a fentanyl-related compound*, and if the offender also is convicted of or pleads guilty to a specification of the type described in division (B) of section 2941.1410 of the Revised Code that charges that the offender is a major drug offender, in addition to any other penalty imposed for the violation, the court shall impose on the offender a mandatory prison term of three, four, five, six, seven, or eight years. * * * A court shall not impose more than one prison term on an offender under division (B)(11) of this section for felonies committed as part of the same act.

(Emphasis added.)

23

{¶68} Read together, R.C. 2929.14 and 2941.1410 only authorize the imposition of an additional prison term for an MDO specification when the drug involved is a fentanyl-related compound or a mixture thereof. So the trial court could only have imposed additional prison terms for the MDO specifications attached to Gill's offenses for trafficking in and possession of a fentanyl-related compound in counts 13 and 14, and not the additional trafficking and possession offenses. However, the plain language of R.C. 2929.14(B)(11) only authorizes the trial court to impose one additional prison term for these specifications, which will not be an issue at resentencing since counts 13 and 14 must merge.

{¶69} Gill's remaining trafficking and possession convictions classified him as a major drug offender based on the amount of drugs involved. No additional prison term could be imposed for those convictions. R.C. 2929.14(B)(3) governs the trial court's imposition of sentence and provides that for offenses where an offender is classified as a major drug offender:

> [T]he court shall impose upon the offender for the felony violation a mandatory prison term determined as described in this division that cannot be reduced * * *. The mandatory prison term shall be the maximum definite prison term prescribed in division (A)(1)(b) of this section for a felony of the first degree, except that for offenses for which division (A)(1)(a) of this section applies, the mandatory prison term shall be the longest minimum prison term prescribed in that division for the offense.

R.C. 2929.14(B)(3). Rather than require the imposition of an additional prison term, this statute provides that the trial court must impose a mandatory prison term for the

24

underlying offense. And because R.C. 2929.14(A)(1)(a) applies, the statute specifies that the mandatory prison term is "the longest minimum prison term prescribed in that division for the offense."

**{¶70}** We accordingly hold that an additional prison term may only be imposed for an MDO specification if the drug involved is a fentanyl-related compound or mixture thereof. The Fifth Appellate District reached this same conclusion in *State v. Wood*, 5th Dist. Perry No. 22-CA-00002, 2022-Ohio-3536. In *Wood*, the court explained, "Wood argues that while he is subject to the 11-year sentence as a major drug offender, he is not subject to the additional 3-year terms imposed by the trial court pursuant to R.C. 2941.1410. Wood argues these additional terms are applicable only to offenses involving fentanyl-related compounds. The state agrees and concedes this argument." *Id.* at ¶ 34.

**{¶71}** The trial court erred in failing to merge the sentences imposed for the MDO specifications attached to counts 13 and 14. And it erred in imposing additional prison terms for the MDO specifications attached to counts 11, 12, 15, and 16. Gill's eighth assignment of error is sustained.

### IX. Use of a Nunc Pro Tunc Entry

**{¶72}** In his sixth assignment of error, Gill argues that the trial court erred by increasing his sentence by a nunc pro tunc entry. He contends that the trial court erroneously used the nunc pro tunc entry to impose an indefinite sentence under the Reagan Tokes Law not imposed at the sentencing hearing and to increase his sentence from an aggregate of 20 to 23.5 years' imprisonment to an aggregate of 20 to 25.5 years' imprisonment.

{¶73} As explained earlier in this opinion, the sentence imposed for the offense of possession of heroin in count ten that Gill alleges was improperly modified by the nunc pro tunc entry is being reversed on other grounds and the trial court will need to conduct a new sentencing hearing and issue a new sentencing entry. Consequently, Gill is already being accorded the relief he seeks in this assignment of error. *See In re A.B.*, 1st Dist. Hamilton Nos. C-190327, C-190328, and C-190329, 2020-Ohio-3904, at ¶ 8. We accordingly we hold that Gill's sixth assignment of error is moot.

## X. Motions to Suppress

{¶74} In his ninth assignment of error, Gill argues that the trial court erred in denying his motions to suppress. He contends that his statements given to the police should have been suppressed because he had unequivocally invoked his right to counsel. He further argues that the evidence found inside Turner's apartment should have been suppressed because the police did not obtain valid consent to search.

{¶75} Our review of a trial court's ruling on a motion to suppress "presents a mixed question of law and fact." *State v. Wright*, 1st Dist. Hamilton No. C-210486, 2022-Ohio-2161, ¶ 11; *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. *Wright* at ¶ 11; *Burnside* at ¶ 8. But we then must "independently determine[], without deference to the trial court's conclusion, whether the facts satisfy the legal standard." *Wright* at ¶ 11; *Burnside* at ¶ 8.

### A. Invocation of Right to Counsel

**{¶76}** We first address Gill's argument that the trial court should have suppressed his statements given to the police because he had unequivocally invoked his right to counsel.

### 1. Applicable Law

**{¶77}** Questioning of a suspect during a custodial interrogation must cease any time that the suspect clearly and unambiguously invokes the right to counsel. *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *State v. Smith*, 1st Dist. Hamilton No. C-130239, 2014-Ohio-1955, ¶ 12. "If a suspect's reference to an attorney is ambiguous or equivocal 'in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel,' police do not need to stop their questioning." (Emphasis sic.) *Smith* at ¶ 12, quoting *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

**{¶78}** Where a suspect has invoked the right to counsel, "police may not reinitiate an interrogation under the guise of a generalized discussion about the investigation." *State v. Madden*, 1st Dist. Hamilton No. C-210537, 2022-Ohio-2638, ¶ 4. An interrogation consists of "any words or actions on the part of the police * * * that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at ¶ 5, quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). While the police may not reinitiate an interrogation, a dialogue can be resumed if the suspect initiates the dialogue and knowingly and voluntarily waives the right to counsel. *Id.* at ¶ 4.

## 2. Gill's Interrogation

**{¶79}** After Gill was arrested, he was placed in a room at the police station where he was questioned by Cincinnati Police Detectives Takia Tyus and Bill Hilbert. Gill was read his *Miranda* rights before the detectives began to question him about the shooting that resulted in Tremble's death. Gill denied any involvement in the shooting, stating that "I don't even know what y'all talking about, bruh. I would have had a lawyer or something." Despite the detectives informing him that they had a surveillance video of him shooting and striking Tremble, Gill maintained his innocence. He stated, "I'm trying to tell you, bro. If I would have did it, I would have came down here with a lawyer or something, bro. I did not do nothing, bro. I ain't got no lawyer or nothing, bro." Several minutes later, Gill repeated this sentiment, again telling the detectives, "Bruh, I would have had my lawyer. I would have called my lawyer. I ain't got no lawyer to call y'all," and "I'm telling you I don't know nothing man, for real, bro. I would have had a lawyer. I would have called a lawyer."

**{¶80}** The questioning moved on from the shooting of Tremble to the weapon and drugs found during the search of Gill and Turner's apartment. After telling the detectives that Turner had a gun license, Gill became agitated and stated, "I'm ready to go to jail for my gun. I'm not talking to y'all no more." In response, the detectives told him that he was being charged with murder. Still agitated, Gill responded, "I would have brought a lawyer" and "I'll buy a lawyer." After more back and forth regarding the murder, the following exchange occurred:

Gill: I'm going to call—I'm going to call my lawyer.

Detective Hilbert: Any—

Gill: Let me buy a lawyer, bro. Let me call my lawyer, bro.

28

Detective Hilbert: We'll give you that opportunity.

Gill: I already—

Detective Hilbert: We're not talking to you about it anymore.

Gill: I'll call my uncle.

Detective Hilbert: Okay?

Gill: My uncle—my uncle got—he got one of the best lawyers, bruh.

Detective Hilbert: That's fine.

Gill: I'll call my uncle.

Detective Hilbert: Who's your lawyer? Who do you want?

Gill: I don't got—I don't know, bruh.

Detective Hilbert: Okay.

Gill: I have to call my uncle. He got connections and shit like that.

Detective Hilbert: Okay. That's fine.

Gill: I don't know.

Detective Hilbert: And that's all we deal with is the best lawyers. I hope

you do, because we don't—we want to make sure you're treated fairly.

Okay? But you got to come to Jesus on some of this.

Gill: Can I—can I talk to my girl, please man?

{¶81} After this exchange, Gill told the detectives that he would "probably" talk to them after he spoke with Turner. Back and forth conversation continued without the detectives asking Gill any questions, mainly concerning Gill's concern about Turner. Gill asked the detectives, "Why y'all doing this to me, bruh?" Gill was again reminded that the police had video evidence of the shooting. Gill continued to maintain his innocence, asserting there was no proof that he shot a gun. He told the

29

detectives that he had "a name" for them, that he knew who "really did it," and that this unnamed person still had the gun. Gill continued to discuss the unnamed person while detectives Tyus and Hilbert asked responsive questions to his statements. Gill asked the detectives why they believed he was guilty, and they again stated that they had a video of him committing the crime.

{¶82} Gill moved the topic of conversation back to Turner, stating that he did not want her to be held responsible for his gun. The detectives assured him that she would not. Gill then asked the detectives why they had taken his phone from him. They responded that they were going to go through the phone to ascertain Gill's location the night of the shooting. Continuing to deny involvement in the shooting, Gill stated, "If I had a lawyer—I would have came in here with a lawyer, I would have told y'all from the beginning, like, bruh. I ain't talking without my lawyer, bro." After more back and forth questioning and conversation, Gill again asked to see Turner.

{¶83} The detectives left the room for a substantial period. Turner was then brought into the room, where she and Gill spoke for several minutes. Gill told Turner that she should not have consented to the search of their apartment. After Turner left, Gill was told that paperwork was being prepared and that he would be transported to jail. Detective Tyus reentered the room and asked Gill about contact information and any potential medical issues. She left after obtaining that information, but then returned with Detective Hilbert. Gill asked the detectives why they hadn't come back and talked to him, stating, "I told y'all I'll tell after y'all—after I see my family, that's when I'd talk." Gill asked what he was being charged with and was told murder. He told the detectives that they should have talked to him rather than file charges against him. The following exchange then took place:

Detective Hilbert: You've requested an attorney. Okay? If you want to talk to us, you have to waive that right now.

Gill: I requested an attorney?

Detective Hilbert: I'm not going to ask you any more questions. If you want to talk about the murder—we don't care about the dope or anything. That shit works itself out. Okay?

{¶84} The conversation continued, with Gill denying involvement in the murder. Eventually, Detective Hilbert stated, "You have to either tell or not because you have requested an attorney." Gill continued to talk and maintain his innocence. The detectives eventually left the room again, and Gill was also taken out.

{¶85} Sometime later, Gill was returned to the interview room by a different police officer because he had asked to speak to the detectives again. Detectives Hilbert and Tyus entered the room, and Detective Hilbert again read Gill his *Miranda* rights. Gill acknowledged that the rights had been read, and Detective Hilbert stated, "And you know—and you're waiving your right. You did previously request a lawyer, but you've been talking back and forth, okay. I just want to make sure you know what you're doing."

### 3. Analysis

{¶86} Gill made references to hiring an attorney numerous times during his conversation with the detectives. Many of those references were indisputably not clear and unambiguous requests for counsel. At several points during the interview, Gill referred to hiring a lawyer in the context of maintaining his innocence, essentially stating that if he had committed the crime, he would have called a lawyer.

{¶87} Gill's later reference to a lawyer cannot be so easily resolved. As evidenced in the exchange between Gill and the detectives set forth above, Gill at one point clearly stated, "I'm going to call my lawyer." Detective Hilbert responded by asking him for the name of his lawyer. The record also evidences that the detectives believed that Gill had, in fact, requested counsel. Detective Hilbert stated to Gill three times that Gill had requested an attorney. Somewhat perplexingly, Gill seemed surprised the first time that Detective Hilbert made this statement, asking, "I requested an attorney?"

{¶88} We need not determine, however, whether Gill clearly and unequivocally invoked his right to counsel, because even if he had, Gill on his own reinitiated a dialogue with the detectives after stating that he was going to call a lawyer. Without being questioned by the detectives, Gill continued to maintain his innocence and question the detectives about the evidence they had against him. Gill consistently showed a desire to talk about the investigation and continue speaking with the detectives.

{¶89} The facts of this case are similar to those of *State v. Williams*, 1st Dist. Hamilton Nos. C-060631 and C-060668, 2007-Ohio-5577. In *Williams*, initial questioning of Williams by a detective ceased after he requested an attorney. *Id.* at ¶ 35. When the interviewing detective subsequently brought Williams a jail uniform, he told the detective that he wanted to talk, without any prompting or questioning from the detective. *Id.* The detective told Williams that he could not speak to him unless Williams waived the right to counsel, and "Williams persisted in expressing his willingness to talk." *Id.* In affirming the trial court's denial of Williams's motion to suppress, we stated that Williams "evinced a willingness and a desire for a generalized

discussion about the investigation." *Id.* at ¶ 36, quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-1046, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

{¶90} Because Gill, even if he had invoked his right to counsel, repeatedly reinitiated a dialogue with the detectives and "evinced a willingness and a desire for a generalized discussion about the investigation," we hold that the trial court did not err in denying his motion to suppress his statements because he had not clearly and unequivocally invoked his right to counsel. *See id.*

### B. Consent to Search

{¶91} We next consider Gill's argument that the evidence found inside Turner's apartment should have been suppressed because the police did not obtain valid consent to search.

{¶92} A warrant was not obtained before Gill's apartment was searched. Rather, the search was conducted after Turner, who resided at the apartment with Gill, gave officers consent to search. "Where the state relies upon consent to justify a warrantless search, it bears the burden to show that consent was freely and voluntarily given." *State v. Richardson*, 1st Dist. Hamilton No. C-200187, 2021-Ohio-2751, ¶ 21. Whether consent was voluntarily given is an issue of fact that must be determined based on the totality of the circumstances. *Id.* "Police officers need not warn an individual of the right to refuse consent." *Id.*

{¶93} At the suppression hearing, the state presented evidence that Turner consented to the search of the apartment. Detective Eric Karaguleff testified that he was tasked with securing Turner's apartment. Detective Karaguleff, along with Detective Wloszek and a uniformed officer, knocked on the apartment door. Turner opened the door, but then pulled it partially shut, leaving it ajar behind her while she

33

spoke to the officers. According to Detective Karaguleff, Turner initially expressed some concern about giving consent for the apartment to be searched, including concern that her child would be taken from her. Turner's mother arrived on the scene and encouraged her to cooperate. While Turner was deciding whether to give consent, the officers briefly entered the apartment to clear it for anything that would present a danger. After the apartment was cleared, Turner gave consent to search and signed a consent-to-search form. The consent form was admitted at the suppression hearing. Neither Turner nor her mother testified at the suppression hearing.

{¶94} In overruling Gill's motion to suppress on this ground, the trial court stated:

Law enforcement going in with consent was appropriate. Taking steps to obtain a search warrant would have been appropriate also. The bottom line is Keiarra Turner was somewhat hesitant to grant consent at times. It appears she was upset about something. Nonetheless, she is the owner of that apartment, granted consent to search. I know her mother helped her arrive at that decision, but it was a voluntary consent given. She signed the consent form. It was read to her properly. She signed it properly.

And as far as the clearing the apartment, I think the police officers were well within their rights to clear the apartment. They would be derelict in their duty if they did not clear that apartment before they went in looking for any type of evidence regarding the murder.

{¶95} Gill argues that the protective sweep conducted by the officers was illegal, and that it rendered Turner's subsequent consent invalid. "Under the Fourth

34

Amendment, protective sweeps are constitutional for the narrow purpose of ensuring the safety of officers who are lawfully present in a home." *State v. Jones*, 1st Dist. Hamilton No. C-220007, 2023-Ohio-844, ¶ 15, citing *Maryland v. Buie*, 494 U.S. 325, 337, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). A protective sweep is justified where a reasonable officer, who is lawfully present in the home, is warranted in believing that the area harbors an individual posing a danger to the officers or others based on specific and articulable facts and rational inferences that flow from those facts. *Id.* at ¶ 15-16. A protective sweep must "last[] no longer than is necessary to dispel the reasonable suspicion of danger." *Buie* at 335-336. In determining whether a protective sweep is reasonable, courts must balance officer safety against the rights of people to be secure in their homes. *State v. Nelson*, 1st Dist. Hamilton No. C-150650, 2016-Ohio-5344, ¶ 17, citing *Buie* at 332 ("Where concerns of officer safety are present, the United States Supreme Court has measured reasonableness by balancing the need for the search against the invasion the search entails.").

{¶96} We question the legality of the protective sweep in this case. Gill had been taken into custody prior to the officers' arrival at the apartment. The officers were not at the apartment to execute an arrest warrant, but rather to see if Turner would give her consent to search. "Courts have also permitted a protective sweep even when no arrest takes place provided the officers entered the residence lawfully." *Id.* The state did not argue exigent circumstances and Turner had not yet given her consent to the officers to enter her home. Thus, there is a question of whether the officers entered the residence lawfully.

{¶97} The state relies on *State v. Smith*, 1st Dist. Hamilton No. C-061032, 2007-Ohio-3786, ¶ 27, to stand for the proposition that even if the officers had not yet

35

obtained consent to search and even if Turner had not voluntarily invited them into the apartment, the officers were justified in entering the apartment to conduct a limited protective sweep. However, the language the state relies on in *Smith* is dicta because the officers in *Smith* had already orally been given consent to search before they conducted a protective sweep. *Id.* at ¶ 26. The sweep occurred before they obtained *written* consent to search. *Id.*

{¶98} However, we need not determine whether the sweep was justified because Turner consented to the search of the apartment and the record contains no evidence that her consent was tainted by the protective sweep. *See United States v. Delancy*, 502 F.3d 1297, 1300 (11th Cir.2007) (even if it is assumed that a protective sweep is unlawful, a motion to suppress is properly denied where consent to search is voluntarily given and is not tainted by the sweep). Here, even though Turner's consent was obtained shortly after the protective sweep was conducted, Turner was not handcuffed or detained and the record suggests that even though she was "upset" that the police were there and her boyfriend had been arrested, her interaction with the officers was conversational, rather than confrontational. *See id.* at 1311. Turner's consent was not merely oral, but rather, she read and signed the consent-to-search form. *Id.* The record does not contain evidence that the protective sweep was pretextual or conducted for any other purpose than to ensure the officers' safety. It was clear from the testimony that the officers believed they already had probable cause to search the apartment for the murder weapon. There is no evidence that the officers acted flagrantly after gaining access to the apartment to conduct the sweep. *See id.* at 1313. They did not seize any evidence, open containers, or tear the residence apart. There is no evidence that they used any information obtained or contraband viewed

36

during the protective sweep to coerce Turner into giving consent. As stated above, neither Turner nor her mother testified at the suppression hearing, and nothing in the officers' testimony leads us to believe that Turner's consent was tainted by the protective sweep. The trial court did not err in determining that Turner provided valid consent to search. The record contains no evidence that the officers engaged in coercive tactics or pressured Turner to consent, and the totality of the circumstances establish that Turner's consent was voluntary. *See Richardson*, 1st Dist. Hamilton No. C-200187, 2021-Ohio-2751, at ¶ 21

{¶99} We accordingly hold that the trial court did not err in denying Gill's motions to suppress. The ninth assignment of error is overruled.

## XI. Conclusion

{¶100} Gill's convictions for WUD, trafficking in heroin, possession of heroin, trafficking in cocaine, possession of cocaine, trafficking in a fentanyl-related compound, possession of a fentanyl-related compound, aggravated trafficking in drugs, and aggravated possession of drugs are affirmed. The sentence imposed for the offense of WUD is also affirmed.

{¶101} But the sentences imposed for all remaining offenses are reversed and this cause is remanded for resentencing. Because the various trafficking and possession convictions for each respective drug are allied offenses of similar import, they must be merged at sentencing. The multiple firearm specifications must also be merged. On remand, the trial court must make the necessary findings before imposing consecutive sentences. And it may not impose additional prison terms for the MDO specifications attached to the trafficking and possession offenses other than the offense involving a fentanyl-related compound.

37

Judgment accordingly.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.